## SALLIOTTE *v.* DOLLARHITE.

1. PRINCIPAL AND AGENT—FRAUD—FIDUCIARY RELATION.

Where defendant occupied the position of agent and trusted adviser, it was his duty, that his conduct might be reconciled with good faith and honesty, to lay before his principal every fact and inducement connected with or bearing upon a proposed sale of her land, in which he was to profit to the extent of $2,500. ·

2. SAME—FRAUD—INTENT—EVIDENCE.

Defendant's failure to lay before his principal every fact and inducement connected with the sale of her land, in which he profited, *held*, *prima facie* evidence of' an intent to defraud his principal.

3. SAME—GIFT—FRAUD.

Where defendant failed to lay before his principal the fact that he was to profit to the extent of $2,500 in the sale of her land, a gift of $1,000 by her to him in connection therewith, *held*, fraudulent.

4. SAME—FRAUD—ACCOUNTING—FIDUCIARY RELATION.

Where, before his appointment as agent and confidential adviser, defendant purchased of his principal, who was mentally competent, land on which he made a profit of $2,000, the court below was in error ·in requiring defendant to account for same, since his relation at the time was not fiducial.

Appeal from Wayne; Perkins (Willis B.), J., pre-siding. Submitted June 11, 1920. (Docket No. 57.) Decided July 20, 1920.

Bill by Ignatius J. Salliotte, guardian of Catherine C. Salliotte, against Alexander H. Dollarhite and others for an accounting. From a decree for plaintiff, defendant Dollarhite appeals. Modified and affirmed.

*Thomas J. Bresnahan,* for plaintiff.

*Welsh, Bebout & Kahn,* for appellant.

CLARK, J. This case is here upon the appeal of the defendant Alexander H. Dollarhite. In March, 1913, appellant contracted to purchase from Catherine C. Salliotte, then a widow of about 65 years, three acres of land in Wayne county, the purchase price being $4,500. Six weeks later, at the request of appellant, Mrs. Salliotte conveyed the land to one Cahalan from whom Dollarhite received $6,500, thus making a gain of $2,000. In November, 1913, Mrs. Salliotte gave to appellant a power of attorney to which we shall later allude, and in March, 1914, a second and like written authority was given. Under both writings appellant was to receive $10 per month for his services. On April 28, 1914, Mrs. Salliotte with appellant executed a contract by which appellant was given "the exclusive right to buy from her or her heirs or to sell for her the piece of land owned by her in Ecorse township, Wayne county, Michigan, containing 43 acres, * * * for the price of nine hundred and fifty dollars per acre." On or about April 30, 1914, appellant contracted to sell the 43 acres to one Russell at a price of $1,050 per acre and at appellant's direction Mrs. Salliotte conveyed this land to Russell, and from this transaction appellant received, after certain expense items were paid, $2,500. Later appellant received from Mrs. Salliotte of the proceeds of this sale the further sum of $1,000 which appellant claims was given him in return for certain kindness and service, and of which the court said:

"* * * The sum of one thousand ($1,000.00) dollars appropriated by the said Alexander H. Dollarhite from cashier's check, dated July 29th, 1914, in the sum of two thousand ($2,000.00) dollars, payable to John A. Russell and indorsed by him to Catherine

C. Salliotte, and indorsed by the said Catherine ·C. Salliotte to the said. Alexander H. Dollarhite, the said Catherine C. Salliotte having received a promissory note of John A. Russell, payable to Alexander H. Dollarhite, of one thousand ($1,000) dollars on account of said check."

In October, 1914, Mrs. Salliotte was adjudged mentally incompetent by the probate court of Wayne county and plaintiff, Ignatius J. Salliotte, was appointed her guardian, who later caused the bill of complaint to be filed alleging that at the time of the aforesaid transactions Mrs. Salliotte was mentally weak and incompetent and unable to know and understand the extent and value of her property, that at such time appellant was her agent and adviser, that his relation to her was that of a fiduciary; and that appellant fraudulently took advantage of his position and of the mental incompetency with the result as above set forth.

Accounting, injunction and other relief were prayed. After answer and hearing the trial court found:

"* * * that the material facts charged in said bill of complaint are true and that the plaintiff is entitled to the relief therein prayed. And this court does further find that at the time of the transaction stated in said bill of complaint, the said Catherine C. Salliotte was mentally incompetent and that the said defendant, Alexander H. Dollarhite, while acting as attorney in fact and in a fiduciary capacity towards the said Catherine C. Salliotte, took undue advantage of her situation and appropriated moneys belonging to the said Catherine C. Salliotte to his own use and profit."

It was decreed that defendant, Alexander H. Dollarhite, pay to plaintiff the sum of $2,000 received from the sale of the 3-acre tract, the sum of $2,500 received from the sale of the 43-acre tract and the sum of $1,000 claimed to have been donated by Mrs. Salliotte, in all $5,500.

The record contains nearly 200 pages of testimony relating largely to the claimed mental incompetency, fiducial relation and fraud. Mrs. Salliotte was sworn and testified at length. No one will be helped by a discussion of the merits. We have read the record carefully and agree with the trial court that in receiving the $2,500 item and the $1,000 item the appellant violated his duty as a fiduciary and took advantage of a confidence inspired by his position. The authority given to this agent, Dollarhite, by his principal, Mrs. Salliotte, as stated in the first power of attorney was:

"* * * to receive funds of all personal property, to execute leases generally, to purchase or lease for business, to manage real estate, to transact and defend suits, to compromise claims, to compromise or extend the time of payment of debts, to collect rents or eject tenants, to sign and indorse bills, to sell goods and collect proceeds, and indorse checks, bills and notes. Deposit money and draw checks in the principal's name, to act generally."

The language of the second power of attorney is substantially the same. Authority to sell real estate is not set forth in the writings but the real estate was a subject-matter of the agency. Appellant was to manage the real estate, lease the same, collect rents, eject tenants, execute leases and to act generally. The relation was fiducial. The evidence shows that appellant was the trusted adviser of Mrs. Salliotte. It was his duty, that his conduct might be reconciled with good faith and honesty, to lay before his principal every fact and inducement connected with or bearing upon the proposed sale of the 43-acre tract. This he did not do. *Prima facie* this transaction is indicative of an intent to defraud Mrs. Salliotte, his principal. *Moore* v. *Mandlebaum*, 8 Mich., at page 442; *Beedle* v. *Crane*, 91 Mich. 429; 31 Cyc. p. 1442; and this is also true of the transaction respecting the $1,000 claimed as a gift. See 31 Cyc. p. 1442. The trial

court was right in requiring defendant Dollarhite to account to plaintiff for the items of $2,500 and $1,000.

We do not find that at the time of the sale of the 3-acre tract, the $2,000 item, appellant was the agent of Mrs. Salliotte. The relation was not then fiducial. Nor do we agree with the trial court that at the time of making of the land contracts with appellant and the deeds to Cahalan and Russell Mrs. Salliotte was mentally incompetent. We think she was competent. But suppose that she was mentally incompetent as counsel so earnestly contends. On that ground alone could plaintiff have decree that appellant Dollarhite . account for the sum of $2,000 and the further sum of $2,500 which he received because Mrs. Salliotte went through the form of executing contracts and deeds? It is unnecessary to decide this question and we do not decide it, but we suggest to counsel that, stripped to its essentials, the bill of complaint in this cause which has been heard seeks a decree for money, a money judgment, as commonly said; that the deed of a mentally incompetent person is not void but voidable; and that it may be ratified by such person when restored to competency and by his heirs and representatives after his death. By a suit for damages or a money decree, involving an affirmance or ratification of voidable deeds, may the guardian ratify such deeds? Is not this question answered by the following?

"Under our statutes, the guardian can only dispose of the real estate of his incompetent ward through proceedings in, and authority granted by, the probate court. To hold that the guardian may ratify a conveyance by a suit based upon the theory that title had passed to the grantee who was liable to. respond in damages because of the inadequacy of consideration, would result in permitting the guardian to do indirectly what he could not do directly and would open up an easy way for disposing of the real estate of incompetent persons. We are satisfied that the

guardian has no authority to ratify the conveyances of his ward, either directly or indirectly." *King* v. *Sipley*, 166 Mich. 262 (34 L. R. A. [N. S.] 1058, Ann. Cas. 1912D, 702). See, also, 22 Cyc. p. 1174.

It follows that the provisions of the decree for recovery of the item of $2,000 will be eliminated and the amount of recovery reduced to $3,500. As modified, the decree is affirmed. Said defendant will recover costs of this court.

Moore, C. J., and Steere, Brooke, Fellows, Stone, Bird, and Sharpe, JJ., concurred.