### BECK *v.* BECK.

Cancellation of Instruments—Deeds—Fraud—Evidence Insufficient to Establish Fraud.

In a suit to set aside certain conveyances and for an accounting, on the ground of fraud, evidence *held*, insufficient to establish fraud.

Appeal from Alpena; Emerick (Frank), J. Submitted June 20, 1928. (Docket No. 96, Calendar No. 33,415.) Decided October 1, 1928. Rehearing denied December 4, 1928.

Bill by John Beck and another against Peter Beck and another to set aside certain conveyances, and for an accounting. From a decree for plaintiffs, defendants appeal. Reversed, and bill dismissed.

*Guy D. Henry* and *Carl R. Henry,* for plaintiffs.

*Frank T. Hinks* and *Alfred F. Myer,* for defendants.

CLARK, J. Plaintiffs, husband and wife, alleging fraud, filed this bill to set aside conveyances and for accounting, and had decree, from which defendants have appealed.

A preliminary question is that much of the property of which restoration is sought was not owned by plaintiffs or either of them, but by a corporation, not a party hereto, in which plaintiff John Beck was dominant. In our view of the case the question is not important and it is passed.

The principal questions are fraud and laches. But as only one question is necessary to decision, we discuss that of fraud.

Judge Emerick saw the witnesses and heard their testimony; he knew most of them personally, and other proceedings had before him entered into the controversy. Conscious of this advantage of the learned trial judge, we have examined the record with much care. Our duty is to decide upon the record as presented to us by counsel.

Prior to 1918 John Beck, a brewer, had accumulated considerable property. In 1918 he ventured into the business of making near beer and lost. He attempted other business without success. He became insolvent. Taxes in large amount became a lien on the property and remained unpaid. Water charges in large amount and long delinquent were

due the city of Alpena. Suits were commenced against him or his company. He tried repeatedly to borrow money to pay creditors and failed. He owed his brother, defendant Peter Beck, a considerable sum. He attempted composition with creditors, and many of them were willing to accept a small percentage in settlement. A fact, significant to those familiar with such matters, is that the local bank consented to compromise its claim and to suffer a loss of several thousand dollars. Bankruptcy was feared. John Beck appealed persistently to his brother, a man of some means, who, though advised against it, finally agreed to act. Peter Beck's son, Anthony Beck, the other defendant, was persuaded to quit his home and his business in Saginaw and to remove with his family to Alpena and to take charge of the affairs. Then followed judgments, assignments, compositions, conveyances, and a contract, the net result of all of which was that the property was turned over to defendants, the creditors were satisfied, and defendants bound to pay monthly to plaintiffs an annuity for their lives, which was paid regularly for some two or three years and before this suit was started. During the whole course of the transaction both sides were represented and advised by able and reputable counsel.

We find no fraud. John Beck, testifying, said over and over again that he was sick at the time. He spent some time taking baths at Mt. Clemens and more time in going about to persuade creditors to compromise. His claimed illness is of no importance with respect to the question before us.

Decree reversed and bill dismissed, with costs to defendants.

FEAD, C. J., and NORTH, FELLOWS, WIEST, McDONALD, POTTER, and SHARPE, JJ., concurred.