## McAFEE v. BANKERS TRUST CO.

1. RECEIVERS—LEAVE OF COURT NOT NECESSARY IN ACTION AGAINST RECEIVER FOR PERSONAL TORT.

   Rule that receiver may not be sued without leave of court is not usually applied to actions which do not affect custody and control of receivership property, and therefore it does not apply to action brought against receiver individually for his personal tort.

2. SAME.

   Where receiver is personally at fault in wrongfully taking possession of property belonging to and in possession of third party, his receivership is no protection to him, and in such case leave of court to bring action against him personally is not necessary.

3. SAME—AUTHORITY OF RECEIVER.

   Receiver appointed for corporation has only authority to take possession of property belonging to said corporation.

4. SAME—NO AUTHORITY TO USE FORCE.

   Receiver is under no obligation to attempt to take property out of possession of third party by force, but proper course is to apply to appointing court for instructions.

5. SAME—LEAVE OF COURT.

   Action against receiver personally on theory that he was guilty of personal tort in wrongfully taking possession of plaintiffs' property and disposing of it may be maintained without leave of appointing court.

6. CONTRACTS—DIVISIBILITY—PERFORMANCE—TITLE.

   Where contract for drilling oil wells provided that, on delivery of steel casing for each well, payment was to be made therefor to contractor by owner, contract was divisible, and, on payment therefor, title passed to owner without further performance of contract.

Error to Muskegon; Vanderwerp (John), J. Submitted January 14, 1931. (Docket No. 115, Calendar No. 35,275.) Decided April 7, 1931.

On the rule as to right to bring action against receiver without consent of court, see annotation in 39 A. L. R. 8.

Case by Don G. McAfee and another against Bankers Trust Company of Muskegon and another for conversion of a quantity of steel casing. Judgment for defendants. Plaintiffs bring error. Reversed.

*McAllister & McAllister* (*Alexis J. Rogoski,* of counsel), for plaintiffs.

*Cross, Foote & Sessions,* for defendants.

McDonald, J. This action was brought to recover the value of a quantity of steel casing used in the drilling of oil wells. The plaintiffs claim that it was unlawfully converted by the defendant. The steel had come into plaintiffs' possession by virtue of a contract with F. M. Gray, Jr., Inc., employed by them to drill a well at Muskegon. Subsequently, the defendant was appointed receiver for the Gray corporation. It took the steel from the possession of the plaintiffs and disposed of it. The plaintiffs then brought this suit. At the trial, on motion of the defendant, the court directed a verdict in its favor on two grounds; first, because the defendant took possession of the property in question in its official capacity as receiver and therefore this suit, which was begun without leave of the appointing court, could not be maintained; and second, because the undisputed evidence showed the property did not belong to the plaintiffs. On error assigned, the plaintiffs claim the trial court was wrong on both grounds and that therefore the judgment should be reversed.

1. Was it necessary for the plaintiffs to obtain leave of the court before beginning suit?

There is no question as to the general rule that a receiver cannot be sued without leave of the court

that appointed him; but this rule is not usually applied to actions which do not affect the custody and control of receivership property. It does not apply to a suit brought against a receiver individually for his personal tort. It is the duty of the court to protect him against interference with his possession of property belonging to the estate, but, where he is personally at fault in wrongfully taking possession of property belonging to and in possession of a third party, his receivership is no protection to him. He is personally responsible, and, in such case, leave to sue is not necessary. In *Gutsch* v. *McIlhargey,* 69 Mich. 377, the defendants were sued individually in an action of replevin. Bacon was a receiver and McIlhargey was an officer. The court said:

"Objection was also made that Bacon could not, as receiver, be liable in replevin, or for a tort. This is not so. A receiver may frequently, under color of office, get possession of property which does not belong to him, and his official character ought not to be a defense to his tortious action or deprive parties of their rights."

In *Kenney* v. *Ranney,* 96 Mich. 617, the defendant was receiver of mortgaged property. He wrongfully took possession of and sold property belonging to the plaintiff, who sued him individually in trover. The court said:

"Defendant's counsel contend that his receivership protects him from an action, without leave of court first obtained; but this appears to be in conflict with the case of *Gutsch* v. *McIlhargey,* 69 Mich. 377, where it was held that an officer of court obtains no immunity from liability for a tort by reason of his office."

These cases are readily distinguishable from *People, ex rel. Tremper,* v. *Brooks,* 40 Mich. 333 (29 Am. Rep. 534), and other cases cited by the defendant in support of its contention that the plaintiffs cannot maintain this suit against the receiver without leave of the appointing court. In all of those cases the action affects the custody and control of funds and property in the hands of the receiver belonging to his estate. The courts will not permit interference with the receiver's possession of such property. But that is not the purpose or effect of the suit in the instant case. Here the action is against the receiver individually for conversion in taking possession of and selling property belonging to the plaintiffs. It does not affect the custody and control of receivership property. As receiver, the only authority given to the defendant was to possess itself of property belonging to the Gray corporation. It found the property in question in the possession of third parties who claimed to own it and who forbade interference with their possession. Nevertheless, the defendant invaded their premises, forcibly took possession of the property, and sold it. A better and safer way would have been for the receiver to have applied to the appointing court for instructions. If that course had been followed, undoubtedly the court would have advised proceeding in a legal way to try out the plaintiffs' ownership. In 1 Clark on Receivers (2d Ed.), § 397, it is said:

"A receiver is under no obligation to attempt to take property out of the possession of a third party or even out of the possession of the defendant himself by force."

Under the plaintiffs' theory, this is not a suit against a receiver officially. It is an action based

on defendant's personal tort in wrongfully taking possession of their property and disposing of it. Such an action may be maintained without leave of the appointing court.

2. Was the trial court in error in directing a verdict in favor of the defendant on the ground that the undisputed evidence showed the plaintiffs did not own the steel casing?

The plaintiffs entered into a written contract with the Gray corporation to drill wells for them in the oil fields at Muskegon. The Gray corporation was to furnish the materials and do the work for a specified sum. Payments were to be made by the plaintiffs as follows:

"Upon presentation of bill of lading or delivery ticket covering casing for each well, $2,000 shall be paid.

"When well has been spudded in, $750 shall be paid.

"When 10″ casing has been landed, $1,000 shall be paid.

"When 8″ casing has been set, $500 shall be paid.

"When 6⅝″ casing has been set, $1,000 shall be paid.

"When well or wells are completed, the balance due on each well shall be paid. All bills for day work shall be paid in full every two weeks."

It is the plaintiffs' claim that, by the terms of this contract, when the casing was delivered and paid for, it became their property. It is the defendant's claim that it did not become theirs until the contract was completed or until the casing was put in the ground.

By the terms of the contract, payments were apportioned. The payment of the $2,000 was not made to depend on the completion of the contract. The

steel was to be paid for on delivery. It was a divisible contract.

"A contract may be divisible if separate payment was, by the contract, to be made for several things, even though they were to be used together as parts of a completed whole." Williston on Contracts, § 862, p. 1650.

"A divisible contract, using that term properly, is always one contract and not several contracts. It differs in one respect only from other contracts—namely, that on performance on one side of each of its several divisions, the other party becomes indebted for the agreed price of the division." Williston on Contracts, § 861, p. 1649.

"The essential feature of such a contract is that a portion of the price is by the terms of the agreement set off against a portion of the performance and made payable for that portion, so that when part of the performance has been rendered a debt for that part immediately arises." Williston on Contracts, § 861, p. 1647.

The contract in question has all the essentials of a divisible contract. It sets off portions of the price against portions of the performance and requires immediate payment on each portion when performed; "so that when part of the performance has been rendered a debt for that part immediately arises." According to the contract, a portion of the performance was furnishing and delivering steel casing at the well by the Gray corporation. Set off against this was $2,000, a portion of the total price made due and payable immediately. When the steel was delivered, the Gray corporation could have enforced payment of the $2,000 without waiting for the completion of the contract or without further performing any other portion thereof. In

other words, by agreement of the parties, $2,000 of the contract price was apportioned for the payment of the steel when delivered. It was delivered. The $2,000 was paid and title to the steel passed to the plaintiffs.

The court erred in directing a verdict for the defendant. The judgment is reversed, and a new trial granted. Costs go to the plaintiffs.

BUTZEL, C. J., and WIEST, CLARK, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.