STEPHENSON *v.* GOLDEN.

ON REHEARING.

1. APPEAL AND ERROR—REHEARING—REVIEW OF FACTS.

Ordinarily upon rehearing on appeal it is unnecessary to review the facts but, where rehearing is granted in equity appeal without limitation as to reconsideration of any specific question of fact or law, such a review may be had.

2. PLEADING—HEARING ON PLEADINGS.

A pleader ought not to be heard who advances a proposition contrary to law.

3. APPEAL AND ERROR—EQUITY—FINDINGS.

Defendants who do not appeal from decree in equity case are in no position to controvert the facts found.

4. SAME—CROSS-APPEAL.

Errors claimed to be prejudicial to an appellee in an appeal in equity cannot be considered nor may an appellee have an enlargement of relief in the absence of cross-appeal.

5. COURTS—SUPREME COURT—ORIGINAL EQUITY JURISDICTION.

The Supreme Court has no original equity jurisdiction, hence, although it may affirm, reverse, or modify the final order or decree appealed from, upon the pleadings and proofs on which the cause was heard and determined in the Supreme Court, it may not elicit new facts as the basis of its action.

6. APPEAL AND ERROR—SUPREME COURT CONFINED TO THE RECORD.

Supreme Court, in the consideration of a case on appeal, is confined to the record.

7. SAME—RECORD—CIRCUIT COURTS—JURISDICTION—CONSTITUTIONAL LAW.

Record in equity cases must be so made by those who try them as to raise properly the questions sought to be determined judicially since circuit courts have original jurisdiction in all matters civil and criminal not excepted in the Constitution nor prohibited by law (Const. 1908, art. 7, § 10).

8. EQUITY—JURISDICTION—COMPLETE RELIEF.

Courts of equity having once acquired jurisdiction on any well-settled ground ordinarily retain it to grant complete relief.

9. APPEAL AND ERROR—MATTERS REVIEWED.

Supreme Court may not review what was not viewed by the trial court as the record considered on review must be made in the trial court and the Supreme Court is bound by the record.

10. SAME—EQUITY CASES NOT TRIED PIECEMEAL—RECORD.

Parties to a case in equity should try their entire case when it is before the court, as equity cannot try cases piecemeal, and put in the record what ought to be of record so that it may be proved thereby, as the Supreme Court may not consider testimonial facts not a part of the record, not viewed by the trial court, and sought to be interjected on the review.

11. TRUSTS—CONSTRUCTIVE TRUSTS—ORAL PROMISE TO RECONVEY TO ANOTHER.

Where one takes title to real estate upon a mere verbal promise to reconvey to another, no constructive or resulting trust arises in favor of the promisee (3 Comp. Laws 1929, § 12967 *et seq.*).

12. EVIDENCE—CRIMINAL CASES—NON-CRIMINAL CASES.

There are but two classes of cases recognized as requiring different rules of proof: (1) criminal cases, where a conviction is warranted only by proof beyond a reasonable doubt, and (2) cases not criminal, where a preponderance of proof satisfies the legal requirement, and there is no rule of law or of judicial reasoning that adopts any sliding scale of belief in civil cases.

13. TRUSTS—CONSTRUCTIVE TRUSTS—EVIDENCE.

In suit to establish a constructive trust, only a preponderance of proof is required of plaintiff.

14. PRINCIPAL AND AGENT—DEFINITION OF AGENT.

An agent is a person having express or implied authority to represent or act on behalf of another person, who is called his principal.

15. SAME—POWERS, DUTIES AND APPOINTMENT OF AGENT.

An agent is one who acts for or in the place of another by authority from him; one who undertakes to transact some business or manage some affairs for another by authority and on account of latter and to render an account of it; one who is a substitute or deputy, appointed by the principal, with power to do the things which the principal may or can do.

16. SAME—SCOPE OF RELATION.

The term "agent" includes factors, brokers and every other relation in which one person acts for or represents another by his authority.

17. SAME—CREATION OF RELATION.

Whether an agency has been created is to be determined by the relations of the parties as they in fact exist under their agreements or acts.

18. SAME—BUSINESS REPRESENTATIVE—FUNCTIONS.

The characteristic of an agent is that he is a business representative whose function is to bring about, modify, affect, accept performance of, or terminate contractual obligations between his principal and third persons.

19. BROKERS—DEFINITION.

A broker is an agent with special and limited authority who is employed by another to negotiate for specific property with the custody of which he has no concern.

20. PRINCIPAL AND AGENT—LOYALTY OF AGENT.

The first and paramount duty of an agent is loyalty to his principal.

21. SAME—FRAUD.

An agent who acts fraudulently acts in vain.

22. SAME—AGENCY TO PURCHASE—TITLE.

An agent to purchase a specific thing cannot purchase and get title to such thing he was under obligation to purchase for his principal.

23. SAME—FIDUCIARY RELATION.

One occupying a confidential and fiduciary relation to another is held to the utmost fairness and honesty in dealing with the party to whom he stands in that relation and to act with the utmost good faith and loyalty to further the principal's interest.

24. SAME—AGENT'S DEALING FOR HIMSELF—CONSENT OF PRINCIPAL.

Except with the full knowledge and consent of his principal, an agent authorized to buy or sell for his principal cannot buy or sell for himself; nor can he take advantage of the knowledge acquired of his principal's business to make profit for himself at his principal's expense.

25. TRUSTS—ACCOUNTABILITY OF AGENT—PROFITS.

In equity .if an agent is found to have acquired any pecuniary advantage to himself from third parties by means of his fiduciary character, he is accountable to his employer as a trustee for profits he has made.

26. SAME—USE OF KNOWLEDGE OF AGENT FOR OWN BENEFIT.

Since all the knowledge of the agent belongs to the principal for whom he acts, if the agent uses it for his own benefit, he will become a trustee for his principal.

27. PRINCIPAL AND AGENT—FRAUD OF AGENT—PUBLIC POLICY.

An agent's acts which tend to violate his fiduciary duty are considered in the light of frauds upon confidence bestowed, and are not only invalid as to the principal but are also against public policy.

28. EQUITY—ESTOPPEL.

No one may take advantage of his own wrong and he that is guilty of inequity appeals in vain to equity.

29. TRUSTS—PERSONAL ADVANTAGE OF FIDUCIARY.

Wherever a person clothed with a fiduciary character gains some personal advantage by availing himself of his situation as a trustee, he becomes a trustee of the advantage so gained.

30. SAME—CONSTRUCTIVE TRUSTS—CREATION.

A constructive trust is raised by a court of equity wherever a fiduciary gains some personal advantage by availing himself of his situation as trustee.

31. SAME—DEFINED AS INCLUDING AGENTS, PARTNERS, BAILEES, ETC.

"Trusts," in the broadest sense of the definition, embrace not only technical trusts but also obligations arising from numerous fiduciary relationships, such as agents, partners, bailees, etc.

32. SAME—CONSTRUCTIVE TRUSTEE—INTENT.

One may become a constructive trustee, bound by the trust, without desiring to become a trustee and though he wishes to escape such obligation, as constructive trusts arise by construction of equity independently of any actual or presumed intention to create a trust.

33. SAME—CONSTRUCTIVE TRUSTS—REMEDY—FRAUD—EQUITY.

Constructive trusts, also known as trusts *ex maleficio*, trusts *ex delicto*, trusts *in invitum*, or involuntary trusts, are generally thrust on the trustee for the purpose of working out a

remedy and are said to arise from actual fraud, constructive fraud or from some equitable principle independent of the existence. of any fraud.

34. SAME—AGENT TAKING CONVEYANCE IN OWN NAME A TRUSTEE EX MALEFICIO.

If matter relates to one of agency and the agent takes a conveyance in his own name, he will be held to be a trustee *ex maleficio*.

35. SAME—CONSTRUCTIVE TRUSTS—CREATION.

Constructive trusts arise by operation of law, not by agreement or from intention, and are raised by a court of equity whenever it becomes necessary to prevent a failure of justice.

36. SAME—PRINCIPAL AND AGENT—CONSTRUCTIVE TRUSTS.

An agent undertaking any business or the performance of any services for another is disabled in equity from dealing with the subject-matter of the agency upon his own account or for his own benefit, and if he does attempt so to deal in his own name he will be deemed a constructive trustee for his principal.

37. SAME—CONSTRUCTIVE TRUSTS—UNJUST ENRICHMENT.

A constructive trust is imposed not because of the intention of the parties but because the person holding the title to the property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property.

38. SAME—CONSTRUCTIVE, EXPRESS AND RESULTING TRUSTS.

A constructive trust, unlike an express trust or resulting trust, is remedial in character.

39. SAME—CONSTRUCTIVE TRUSTEE—REIMBURSEMENT.

One employed to act as agent of another in the purchase of property, who takes title in himself, will be considered in equity as holding property in trust for his principal even though he makes the purchase with his own money, being entitled in such case in connection with enforcement of the trust to reimbursement for proper expenditures.

40. PRINCIPAL AND AGENT—AGENT MAY NOT ACT FOR HIMSELF OR OTHERS WITHOUT DISCLOSURE.

One who consents to act as agent for another in the purchase of property has no right to make himself the agent of other parties for the purchase of the same lands nor to take advantage of the confidence his position inspired to obtain the title himself, without making full and fair disclosure to his principal.

41. TRUSTS—FRAUD—TRUSTEE EX MALEFICIO.

A title acquired by defendant in fraud of the true owner is held by him as trustee *ex maleficio*.

42. SAME—TITLE—FRAUD—ACCIDENT—MISTAKE—REMEDY.

Fraud, accident or mistake in the procurement or creation of the legal title by which title which should have been taken to the equitable claimant was taken by alleged trustee, gives rise to a constructive trust in favor of the former, equity turning the one who has so procured the title into a trustee to get at him, not to uphold or enforce a parol trust but to relieve against wrong perpetrated.

43. FRAUDS, STATUTE OF—ORAL AGREEMENT TO PURCHASE LAND FOR PLAINTIFF.

Oral agreement, made between plaintiff and defendant through plaintiff's attorney, whereby defendant was to acquire outstanding interests in realty *held*, not void and unenforceable because contrary to statute of frauds (3 Comp. Laws 1929, § 13411).

44. SAME—FRAUD—EQUITY—CONSTRUCTIVE TRUSTS.

The statute of frauds, including its provisions that a trust be created by a written instrument, is not a bar which may be raised in a court of equity by one who has obtained a conveyance by fraudulent means or under circumstances rendering it necessary to impress a constructive trust to grant relief, since such statutory provisions are designed to prevent fraud and not to operate as a cloak therefor (3 Comp. Laws 1929, § 13411).

45. SAME—FRAUD—PURCHASE OF LANDS BY AGENT IN OWN NAME—RELIEF.

The defense of the statute of frauds is not available to an agent who purchases in his own name lands which he has been directed to obtain and such a purchase is a fraud on the principal, governed by exception to the statute prohibiting resulting trusts (3 Comp. Laws 1929, §§ 12973, 12975, 13411).

46. TRUSTS—CONVEYANCE TO ONE OTHER THAN PAYER OF CONSIDERATION—STATUTES.

Statute providing that where consideration for a conveyance is paid by one person and another is named therein as alienee, but no trust results in favor of party paying consideration, title shall vest in alienee applies only where party paying consideration consents to such conveyance and not where conveyance has been taken by mistake or where fraud exists (3 Comp. Laws 1929, § 12973).

47. TRUSTS—CONSTRUCTIVE TRUSTS—STATUTE OF FRAUDS.

   If it would be a fraud to set up the form of a deed, absolute on
   its face, as conclusive, parol evidence is admissible to establish
   constructive, implied or resulting trusts or trusts *ex maleficio*,
   the statute of frauds being inapplicable in such case (3 Comp.
   Laws 1929, § 13411).

48. BROKERS—STATUTE OF FRAUDS—CONSTRUCTION.

   Provision of statute of frauds requiring that every ''contract to
   pay any commission for or upon the sale of any interest in
   real estate'' be void unless in writing signed by party to be
   charged, must be strictly construed, since it is in derogation
   of the common law, the statute having no application to
   promise to pay real estate broker for negotiating a sale or pur-
   chase of land before the addition of above provision (3 Comp.
   Laws 1929, § 13417, subd. 5).

49. TRUSTS—STATUTE OF FRAUDS—STATUTE OF USES.

   Trusts arising by or resulting from operation of law are ex-
   cepted from statute of frauds and statute of uses and trusts
   abolishing trusts (3 Comp. Laws 1929, §§ 12972, 13411).

50. BROKERS—STATUTE OF FRAUDS—AGENCY TO PURCHASE OR PRO-
   CURE LAND—OPTIONS—FRAUD.

   Statute requiring that contracts ''to pay any commission for
   or upon the sale of any interest in real estate'' be void unless
   in writing signed by the party to be charged *held*, inap-
   plicable to employment of agents to purchase lands, to procure
   options on land or to cover fraud (3 Comp. Laws 1929, § 13417,
   subd. 5).

51. PRINCIPAL AND AGENT—PRINCIPAL ENTITLED TO BEST JUDGMENT
   OF AGENT—GRATUITOUS SERVICES.

   Whether an agent is engaged to effect a sale or a purchase, his
   principal is entitled to the benefit of his best judgment,
   knowledge and skill, even though services are gratuitous.

52. TRUSTS—CONSTRUCTIVE TRUSTS—PURCHASE OF PROPERTY BY
   AGENT IN HIS OWN NAME—EQUITY.

   Even though defendant paid his own money for title to prop-
   erty which he took in his own name but which plaintiff's at-
   torney had engaged defendant to procure for plaintiff, pay-
   ment by plaintiff to defendant is unnecessary in order to hold
   latter as constructive trustee of the property where bill alleges
   plaintiff offers and stands ready and willing to do and per-
   form whatever to the court shall seem just and equitable.

53. PRINCIPAL AND AGENT—FRAUD—FORFEITURE OF COMMISSIONS.

An agent who has been guilty of fraud in the transaction of his principal's business forfeits his rights to a commission as such.

54. TRUSTS—UNDISCLOSED PRINCIPAL—CONSTRUCTIVE TRUST.

Where plaintiff's attorney engaged defendant to act as agent to acquire title to realty for an undisclosed principal and defendant took title in his own name, the undisclosed principal may bring suit in his own name to impress and enforce a constructive trust.

55. PRINCIPAL AND AGENT—AGENT CANNOT DENY PRINCIPAL'S TITLE.

An agent shall not be heard to deny the title of his principal.

56. SAME—DISPUTING PRINCIPAL'S TITLE—THIRD PERSONS.

It is no defense in an action by the principal for money collected by the agent, for the latter to show it belonged to third parties.

57. SAME—DISPUTING PRINCIPAL'S TITLE—ILLEGALITY.

An agent may not, by reason of his fiduciary relation get possession of his principal's property and then claim exemption from restitution by pleading the principal's act was an illegal one.

58. TRUSTS—RECEIVER AS PLAINTIFF IN SUIT TO ENFORCE CONSTRUCTIVE TRUST—REAL PARTY IN INTEREST.

No order of court appointing a receiver was necessary to enable him to bring suit in his individual name against an agent to impress and enforce constructive trust upon property acquired by agent in his own name, which receiver had engaged defendant agent to purchase for purposes of the administration of the assets of the receivership, since receiver is the real party in interest and cause of action accrued during course of receivership (3 Comp. Laws 1929, § 14010).

59. RECEIVERS—REAL PARTY IN INTEREST.

While a common-law receiver is not an assignee nor a mere custodian he is the real party in interest, as to assets entrusted to him, for purpose of bringing suit to impress and enforce a constructive trust (3 Comp. Laws 1929, § 14010).

60. SAME—PROTECTION OF PROPERTY OF RECEIVERSHIP.

When persons, other than the receiver, have property in their hands which should be in his hands or divert or attempt to divert property in his custody from him, he may take all ap-

propriate steps in law or equity to reduce such property to possession or protect it from being diverted from its lawful custodian.

61. PARTIES—HOLDER OF RIGHT OF ACTION MAY SUE IN OWN NAME.

A person who is vested with a right of action on a given cause of action may sue upon it in his own name although the whole beneficial interest is in another.

62. RECEIVERS—ACTION IN OWN NAME.

Where a cause of action accrues to the receiver himself he must sue in his own name (3 Comp. Laws 1929, § 14010).

63. SAME—POWER TO SUE IN OWN NAME.

Receiver, whose attorney made contract with defendant to purchase legal title of property in which receivership was interested, had duty to bring suit in his own name against defendant who took title in his own name, whether receiver was appointed by the court in the exercise of its inherent equity jurisdiction, in voluntary dissolution proceedings of a corporation, in proceedings to wind up a corporation or in proceedings in equity against a corporation (3 Comp. Laws 1929, §§ 14010, 15317, 15323, 15337).

64. SAME—LEAVE OF COURT—SUIT FOR PERSONAL TORT IN TAKING POSSESSION.

While generally a receiver may not be sued without leave of the court which appointed him, such rule has no application where suit is brought against him for personal tort in taking possession, under color of his office, of property which does not belong to him.

65. EVIDENCE—FAILURE TO PRODUCE EVIDENCE WITHIN PARTY'S CONTROL—PRESUMPTIONS.

Failure to produce evidence within party's control raises presumption that, if produced, it would operate against him; every intendment being in favor of opposite party.

66. TRUSTS—CONSTRUCTIVE TRUSTS—GRANTEE'S BURDEN OF PROOF—EVIDENCE.

In suit to impress and enforce a constructive trust upon realty which defendant agent had been engaged to acquire for plaintiff, grantee from such agent who had taken title in his own name *held*, not to have sustained her burden of showing she had paid value and that she took without notice of fraud involved, where she did not take the stand, no credible evidence

of such fact was given and agent, in his answer, had referred to her as his partner in transaction whereby he had acquired the title from previous holders. .

67. RECEIVERS—ACCOUNTING.

A receiver is required to account to the court which appointed him for all property coming into his hands as receiver whether the property came into his hands by reason of his appointment or whether he acquired it during the progress of administration of the receivership.

68. SAME—ACCOUNTING—JURISDICTION—REMOVAL.

A receiver can be called to account only in the court which appointed him unless the cause has been removed to another court after his appointment, in which case he may be required to account to the court having jurisdiction of the receivership.

69. PRINCIPAL AND AGENT—FRAUD—COMMISSIONS—IMPROVEMENTS.

Defendant, an agent who was engaged by plaintiff's attorney to acquire legal title to property for plaintiff but who took title in his own name and transferred it to defendant grantee *held,* not entitled to commission for services rendered nor to recover for improvements made on property fraudulently acquired, but merely to reimbursement for purchase price paid for the property.

70. TRUSTS—CONSTRUCTIVE TRUSTS—CONVEYANCE TO PLAINTIFF—REIMBURSEMENT—INTEREST.

In suit to impress and enforce a constructive trust upon property plaintiff's attorney had engaged defendant agent to acquire title, plaintiff *held,* entitled to conveyance from such agent and his grantee upon payment of amount admittedly paid for such title, taken in agent's own name, with interest at 5 per cent., such an agent not being entitled to commission for services rendered and neither he nor his grantee, not shown to have been an innocent purchaser for value, entitled to recover for improvements made on the property.

WIEST, J., dissenting.

Appeal from Wayne; Merriam (DeWitt H.), J. Submitted January 13, 1937. (Docket No. 129, Calendar No. 39,356.) Decided April 29, 1937. Submitted on rehearing July 1, 1937. Decided December 29, 1937.

Bill by Eugene J. Stephenson against Irving Golden and wife and Helen Jaffe to declare and enforce a constructive trust, set aside conveyances, for an injunction and other relief. Bill dismissed. Plaintiff appeals. Reversed and remanded on rehearing. Motion to take further testimony and to retry the case denied.

*John R. Rood,* for plaintiff.

*Van Osdol, McGregor & Dixon,* for defendants Golden.

*Butzel, Levin & Winston,* for defendant Jaffe.

POTTER, J. Upon rehearing, it is ordinarily unnecessary to review the facts. The rehearing granted was not limited to a reconsideration of any specific question of fact or law.

The bill of complaint filed October 26, 1935, alleges defendant Irving Golden represented to plaintiff he was a licensed real estate broker authorized to engage in the business of buying and selling real estate in Michigan and elsewhere; that upon such representation, plaintiff employed Golden to negotiate for the purchase by plaintiff of title to real estate described in the bill of complaint; that defendant Irving Golden undertook and faithfully promised plaintiff to represent him in negotiating for the purchase of the premises, title to be taken in the name of plaintiff; that in violation of the rights of plaintiff, intending to cheat, wrong and defraud him in the premises, and using private, confidential information furnished by plaintiff to defendant Irving Golden, he, in violation of the contract and without the knowledge or consent of plaintiff, purchased and took title to the premises in the name of Irving Golden and caused the same to be recorded in the

office of the register of deeds; that afterwards Irving Golden, conspiring with his wife, Minnie Golden, and one Helen Jaffe, as conspirators, and acting with full knowledge of the rights of plaintiff in the premises, and intending further to cheat, wrong and defraud plaintiff, did execute and cause to be recorded in the office of the register of deeds a quitclaim deed from Irving Golden and wife to Helen Jaffe; that defendant Irving Golden induced plaintiff to postpone obtaining conveyance of the premises by responding to plaintiff's repeated requests for conveyance with various excuses, promising soon to make such conveyance to plaintiff, which promises defendant Irving Golden refused to perform, to plaintiff's injury; that as a result of such transactions, defendants hold title to the premises under a constructive trust in favor of plaintiff. The bill of complaint was filed to obtain specific performance of such trust, and plaintiff offers and alleges he stands ready and willing to do and perform whatever to the court shall seem just and equitable. The bill of complaint prays that defendants be ordered and decreed to make conveyance of the premises to plaintiff on such terms as to the court shall appear just and equitable, and, upon failure to make such conveyance, that the decree of the court operate as such; that defendants be restrained from selling, transferring or incumbering the premises until the cause can be determined upon the merits, and from appropriating or receiving meanwhile any of the rents and profits thereof; that defendants come to a true and just account with plaintiff in the premises; and for other relief.

Upon filing this bill of complaint, *lis pendens* was filed and an injunction issued. December 18, 1935, defendant Irving Golden filed an answer to the bill

of complaint of plaintiff in which he denies he used any private, confidential information furnished by plaintiff; alleges he never met plaintiff, never became acquainted with him; and denies any private or confidential information was ever given him by plaintiff. Further answering, he admits he purchased the title to the premises; alleges that after he became the owner thereof he had negotiations with John R. Rood, attorney of record for plaintiff, in relation to the sale of the property but that the negotiations were never consummated; alleges "*that at the time of purchasing the title to said property this defendant went into a partnership arrangement on this deal with Helen Jaffe for the reason that this defendant did not have the capital personally to handle the deal, and further says, that shortly thereafter he and Minnie Golden, his wife, executed a deed in blank to the said Helen Jaffe for the purpose of securing her against loss in the premises and that thereafter the said Helen Jaffe did pay out to this defendant his full share or interest in the property and that the said Helen Jaffe thereupon became the sole owner thereof.*" He denies all manner of conspiracy and denies that as a result of any transactions, he, or any of defendants, "hold the premises under any constructive trust." He denies plaintiff is without remedy; and alleges the bill of complaint was filed to incumber or attempt to incumber the title in question. He alleges he never met, saw or talked to plaintiff; denies there ever was any agreement, either verbal or in writing, between them with reference to the purchase of the title to the property, and "further shows that he has been informed by his attorneys that under the statutes of the State of Michigan any agreement with reference to real estate or sale and purchase thereof must be in writing in order to be mutually effective and binding."

Minnie Golden, wife of Irving Golden, alleges the only interest she ever had in the property was a dower interest and, at the request of her husband, she signed her name to a deed of the property. She denies she ever met, knew or talked to plaintiff, or ever had any dealings with him, or ever signed any agreements with him in writing pertaining to the property.

The defendant Helen Jaffe, February 8, 1936, filed a motion to dismiss the bill of complaint for the reasons, among others: Because the agreements set forth by the plaintiff in his bill of complaint are void under the statute of frauds of this State in such case made and provided; because any rights claimed by the plaintiff under the allegations contained in the bill of complaint are void by reason of the statute of uses and trusts of the State of Michigan in such case made and provided. Helen Jaffe, for answer, says the alleged agreement set forth in plaintiff's bill of complaint is void under the statute of frauds and other statutes of the State of Michigan. She says she purchased this property as a *bona fide* purchaser, without notice of any of the rights, if any, of plaintiff in the property. She says any contract or agreement relied upon by plaintiff with Irving Golden is void, contrary to public policy, by reason of the statute of frauds, and by reason of the provisions of the statute of uses and trusts. As to the other allegations contained in the bill of complaint, she alleges she has no knowledge.

The case came on for hearing before a circuit court commissioner March 30, 1936. Counsel for defendant Jaffe said:

"I would like to point out to the court the issues that would be involved upon a motion to dismiss. The bill of complaint states the facts that I have just

stated and then continues further with the allegation that Golden, notwithstanding the alleged agreement that he made with Stephenson, bought the property and took the title in his own name, and then sold the real estate to the defendant Jaffe, and there is the blanket allegation of conspiracy. Now the bill of complaint says nothing about Stephenson's furnishing the money for the acquisition of this property; says nothing about Stephenson's furnishing the consideration, or any consideration for the acquisition of this property; says nothing about any instrument in writing being entered into and executed by the defendant Golden in connection with that alleged agreement that is set forth in the bill of complaint. The bill of complaint is defective. * * * Because it is, this is an attempt to create a trust or impose a trust upon the defendants involving real estate and that by way of oral evidence, parol testimony. That is prohibited by the statute of frauds. There can be no resulting trust in this situation; in the first place, the plaintiff doesn't claim that he furnished any money for the acquisition of this property, and secondly, even if he had, the statute has abolished the resulting trusts in this State, 3 Comp. Laws 1929, § 12971. The bill is defective. I think your honor should give us an opportunity to argue the motion.''

Counsel for defendant Golden said:

''I represent one of the defendants here, and I would like to add a word in support of Mr. Quint's request. I believe this case should be disposed of on a motion for dismissal.''

''*The Court: You base your defense solely on the question of law, Mr. Quint?*
''*Mr. Quint:* Yes.
''*The Court:* Since Mr. Rood is from out of town, I see no harm in his putting in his testimony, and

then arguing the matter together, either here or in the circuit court.

"*Mr. Quint:* If testimony is taken at this time without waiving our objections to the testimony, our motions to dismiss that have been filed, we would want to go ahead and put in such proof as we want to.

"*The Court:* The testimony would be taken *with the understanding that your motion to dismiss is before the court undisposed of, and it would be taken into consideration with the testimony, and if it is a question of law any testimony put in wouldn't affect the motion.*"

John R. Rood testified he was acting as attorney and agent for plaintiff; that Irving Golden came to him in the spring of 1935 to negotiate for the purchase of certain bonds on property not involved in this suit; as a result of that negotiation, Golden stated he was a real estate broker engaged in buying and selling properties in Detroit, that was in May or June of 1935; at the time, Stephenson, plaintiff, had the larger part of the bonds of the Guaranty Trust Company issued on the property described in the bill of complaint; the Guaranty Trust Company had gone into receivership; several of the bonds were held by other parties scattered throughout the State; and

"I told him that we were very anxious to obtain the legal title to the property involved in the bill of complaint, because of these complications which I was stating, which made it very difficult for us to foreclose on the mortgage * * * we had a large percentage of the bonds of this issue but other bonds were outstanding, and that the Union Guardian had been appointed successor to the Guaranty Trust Company—successor trustee—and claimed the exclusive right to foreclose, which made it impossible

for us to foreclose. * * * What I asked him to do was if he could acquire the outstanding legal title and I told him that the legal title was in a man by the name of Doty who operates a store on the premises. That a second mortgage was held by Briggs Commercial Development Company * * * I had investigated and found where the legal title was, that Mr. Doty had the legal title, that there was a land contract which the circuit court here had held to be a mortgage, and that Mr. Doty had filed a petition to get the benefit of the State moratorium law under which the court had ordered the matter put over until March 1, 1937, and the Briggs company was in liquidation and receiving no benefits out of the property, and it occurred to me on that account we might make an advantageous arrangement with the holders of the legal title, Mr. Doty and the Briggs company to purchase from both of them and get the title for less than the expenses of foreclosure and the delay would amount to. * * * He told me that he would negotiate with them for the property and if we could make a deal he would conduct it for me for $100. * * * Having put this information into Mr. Golden's hands, he went and interviewed the parties and ascertained that he could purchase the title and reported to me the amount that would have to be paid to buy the title from Briggs company. That we could purchase the title from Briggs for $1,000 and that he had not yet ascertained at what price we could purchase the title from Mr. Doty. Then he told me that he had interviewed an attorney for Mr. Doty, another, a different attorney from the one mentioned in the record in the circuit court and who was a stranger to me. A day or so later I saw him on the curb at the corner of Woodward and Congress streets and he told me that for fear the Briggs Development Company would welsh on its offer to sell the property at the price quoted, he had taken title to the property from

them in his own name, but he says, 'I will nevertheless make the deed over to you just the same as if I hadn't taken the title and this is merely for the purpose of protecting the transaction and avoiding any possibility of their changing their mind before we could get the negotiation completed.' Within a day or two, told him that we wanted to go through; I reported this back to my client, we arranged to get the money; I told him that we had the money ready to pay the amount that was demanded. I saw him repeatedly, I went down to his office; I had him over to my office, once, I think, trying to get the conveyance that he was promising to make * * * that was sometime in June, 1935. After several negotiations, not being able to get anything done and several times finding him not in his office, I went over to the Tract Index and discovered that he had already recorded his deed and made a conveyance to Helen Jaffe.''

He made this examination just before suit was filed. He testified:

''Immediately, I drew the bill and the bill in this case was filed * * * within three or four days after I had examined the record in the Tract Index * * * because of this confidential relation existing between Mr. Golden and me as attorney for Mr. Stephenson, upon which we were relying to obtain this title, I ask that the court decree that the title is held by them in trust for us and I was to have paid him a commission as broker to obtain the conveyance and he had agreed that his commission would be $100. We haven't obtained it; we haven't obtained conveyance up to this time and we ask for a decree that the title be held by them in trust for the plaintiff, by virtue of the fraud committed in the transaction that I have testified to. * * * We gave him no instructions to obtain it in anybody's name but Mr. Stephenson's.''

After defendant Irving Golden obtained the title he told Rood several times he would make conveyance, but he did not do it, and Rood says he did not know that Golden had already conveyed away the title.

It is admitted neither Stephenson nor Rood ever gave Golden any money in connection with the property; that Rood was acting as attorney for Stephenson who was a receiver and desired to acquire the title to the real estate for the benefit of the court and other bondholders in the same matter. Rood says:

"I found that he had apparently double-crossed us and conveyed the property away, and I thought it was not wise to trust him any further, so I filed this suit."

Defendant Jaffe was not sworn, but defendant Irving Golden was cross-examined at length in relation to the allegation in his answer that he was in partnership with defendant Jaffe in the transaction.

The commissioner filed findings of fact and conclusions of law. Exceptions thereto were taken by plaintiff. These were heard before the trial court which found that the discussions and negotiations between the plaintiff by and through his attorney, Rood, and defendant Irving Golden did not constitute a valid and binding agreement whereunder defendant Irving Golden was obligated to acquire the title to the premises described in the bill of complaint for or on behalf of plaintiff, because any agreement that may have been made and entered into by and between plaintiff and defendant Irving Golden with reference to the acquisition of the title to the property and premises was void and unen-

forceable, the same not being in writing; that plaintiff, in the negotiations with defendant Irving Golden with reference to the acquisition of the title to said premises, was acting as receiver appointed by the circuit court for the county of Washtenaw and as such receiver was not authorized by the Washtenaw circuit court to enter into negotiations for the acquisition of title to said premises as such receiver; that plaintiff instituted this proceeding in his individual capacity, whereas, any right of action that plaintiff may have acquired by reason of such negotiations with defendant Irving Golden was acquired by him as such receiver and for the benefit of the receivership estate. The commissioner disposed of the case upon the legal questions raised by defendants on their motion to dismiss. He said:

"The testimony of all witnesses affirmatively shows that there was no written agreement of any kind between the parties in this cause. Section 13411, 3 Comp. Laws 1929, applies specifically to this situation. Quoting the statute:

" 'No estate or interest in lands other than leases for a term not exceeding one year, nor any trust or power over or concerning lands or in any manner relating thereto shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law or by a deed or conveyance in writing subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.'

"The attorney for plaintiff took the stand and introduced his own testimony on his client's behalf and by parol attempted to show the creating of a trust. The Supreme Court of the State of Michigan in the case of *Rothschild* v. *Dickinson,* 169 Mich. 200, said as follows:

" 'We do not think that oral testimony can be resorted to to create a trust in real estate.'

—citing 2 Comp. Laws 1897, § 9509 and (*Renz* v. *Stoll*) 94 Mich. 377 (34 Am. St. Rep. 358); (*Pier-*

*son* v. *Conley*) 95 Mich. 619; (*Sanborn* v. *Loud*) 150 Mich. 154 (121 Am. St. Rep. 614).

"The court determined the same point in *Funk* v. *Engle*, 235 Mich. 195, and the following language appears on page 197 of the opinion in this case:

" 'Our difficulty in granting relief in both cases, however, grows out of the fact that while a trust in personal property may be created by parol and we may, therefore, consider the parol testimony in the case involving money, a different rule obtains as to real estate. A trust in lands may not be created by parol. (3 Comp. Laws 1915, § 11975.) *Renz* v. *Stoll, supra; Longe* v. *Kinney*, 171 Mich. 312; *In re Bush's Estate*, 199 Mich. 192; *Brender* v. *Stratton*, 216 Mich. 166 (22 A. L. R. 728). Hence parol testimony is not admissible to establish such trust and should not be considered over objection, which was properly made.'

"The same situation prevails in the matter before this court, parol testimony having been admitted over objection and insisted upon and put in at the express request of the plaintiff. In the light of the foregoing decision, the plaintiff completely failed to make out a *prima facie* case."

The trial court ratified, adopted and confirmed these conclusions of law. Plaintiff alone appeals.

The sole defense made below was upon questions of law, defendants contending a constructive trust could not be created by parol; the statute of frauds prohibited it; and the agreement between Rood and defendant Irving Golden, not being in writing, was void. A pleader ought not to be heard who advances a proposition contrary to law. There was ample testimony to sustain the findings of the trial court of the discussion and negotiations between plaintiff by his attorney, Rood, and defendant Irving Golden, that there was an agreement between plaintiff, by Rood, and defendant Irving Golden with reference to the acquisition of title to the property described in the bill of complaint; but the trial court held such agreement void as a matter of law, not being in writing and as not having been judicially

authorized by the court by which plaintiff had been appointed receiver.

Golden testified his pleadings were read by him and the statements therein were true. But, though he alleged in his answer he and defendant Jaffe were partners, he denied on trial there was a partnership. His answer alleged he deeded the premises to Jaffe to secure her against loss for having furnished the money to purchase the title. He testified he furnished the money himself and defendant Jaffe did not furnish it, or any of it. He testified he first negotiated with defendant Jaffe four or five weeks after he acquired the property; that the deal with Jaffe was made through a broker named Morris Molteck, that it was made through two brokers. He told Rood he could acquire the Briggs title for $1,000. He acquired it for $250. Neither the telephone company, the Detroit real estate board, nor R. L. Polk & Company, who make directories, list such a broker as "Morris Molteck" and he was not produced.

The testimony clearly shows that John R. Rood, as attorney for plaintiff, employed Irving Golden to negotiate for the purchase of all outstanding title to the property in question not held by plaintiff. It was only by reason of the confidential relation between the parties that Irving Golden knew about and became interested in the property. The testimony of plaintiff's claim was taken under objection and in effect excluded from consideration by the ruling of the trial court. Defendants did not appeal and are in no position to controvert the facts found.

Errors claimed to be prejudicial to appellee cannot be considered in the absence of cross-appeal, *Toledo & A. A. R. Co.* v. *Johnson,* 49 Mich. 148; *Hughes* v. *Railway Co.,* 78 Mich. 399 (4 Am. Neg. Cas. 79); *Tomlinson* v. *Gates,* 98 Mich. 49; *Campbell*

v. *Smith*, 103 Mich. 427; *Kurtz* v. *Railroad Co.*, 238 Mich. 289; nor may appellees have an enlargement of relief without a cross-appeal, *McCabe* v. *Farnsworth*, 27 Mich. 52; *Brown* v. *Bronson*, 35 Mich. 415; *Tapert* v. *Railway Co.*, 50 Mich. 267; *Johnston Realty & Investment Co.* v. *Grosvenor*, 241 Mich. 321.

This court has no original equity jurisdiction. *Bank of Michigan* v. *Niles*, Walk. Ch. (Mich.) 398; *Bailey* v. *DeGraff*, 2 Doug. (Mich.) 169; *Traverse City, K. & G. R. Co.* v. *Seymour*, 81 Mich. 378; *Grand Rapids, G. H. & M. R. Co.* v. *Stevens*, 143 Mich. 646.

"In matters of equity it has appellate powers only. It may affirm, reverse, or modify the final order or decree appealed from, upon the pleadings and proofs on which the cause was heard and determined in this court. But no new facts in the cause can be elicited in that court as the basis of its action, without making it a court of original jurisdiction, as well as a court of appellate jurisdiction." *Bank of Michigan* v. *Niles, supra.*

"In our review of cases brought here by appeal, we are as much bound to confine ourselves to the questions arising upon the transcript, as we would be to confine ourselves to the record in causes removed to this court by writ of error to the circuit." *Bailey* v. *DeGraff, supra.*

This court in the consideration of a case on appeal is confined to the record, *Lingemann* v. *Naoumson*, 237 Mich. 557; *Beck* v. *Beck*, 244 Mich. 174; *Frank* v. *Brown*, 255 Mich. 415; *Karsten* v. *La Huis*, 256 Mich. 524; and it may not consider facts not appearing from the record, *Avendt* v. *Gornbein*, 230 Mich. 194; *Annis* v. *Britton*, 232 Mich. 291; *Greenough* v. *Willcox*, 238 Mich. 52; *Fenn* v. *Mills*, 243 Mich. 634. Those who try equity cases must make the appropriate record to raise properly the ques-

tions sought to be determined judicially. This arises from the inherent nature of equity jurisdiction conferred upon the circuit courts which under our Constitution "have original jurisdiction in all matters civil and criminal not excepted in this Constitution and not prohibited by law." Const. 1908, art. 7, § 10. Courts of equity having once acquired jurisdiction on any well-settled ground ordinarily retain it to grant complete relief. *Whipple* v. *Farrar,* 3 Mich. 436 (64 Am. Dec. 99); *Rickle* v. *Dow,* 39 Mich. 91; *Chase* v. *Boughton,* 93 Mich. 285; *Culver* v. *Avery,* 161 Mich. 322; *Burgess* v. *Jackson Circuit Judge,* 249 Mich. 558; *Younger* v. *Caroselli,* 251 Mich. 533. This court may not review what was not viewed by the trial court. The record considered here must be made there. This court is bound by the record. Courts should have terminal facilities. Repose, not agitation, is favored. Parties to a case in equity should try their case when it is before the court. Equity cannot try cases piecemeal. What ought to be of record must be proved by the record. We may not consider testimonial facts not a part of the record, not viewed by the trial court, sought to be interjected here.

Where one takes title to real estate upon a mere verbal promise to reconvey to another, no constructive or resulting trust arises in favor of the promisee. R. S. 1846, chap. 63 (3 Comp. Laws 1929, § 12967 *et seq.*); *Brown* v. *Bronson,* 35 Mich. 415; *Palmer* v. *Sterling,* 41 Mich. 218; *Waldron* v. *Merrill,* 154 Mich. 203; *Longe* v. *Kinney,* 171 Mich. 312; *McIntyre* v. *McIntyre,* 205 Mich. 496. See, also, 35 A. L. R. 280.

There are cases which suggest a higher degree of proof is required to establish a constructive trust than a mere preponderance of evidence. Many cases

are collected in 23 A. L. R. 1500. Among them are *Bernard* v. *Bougard,* Harr. Ch. (Mich.) 130; *Crissman* v. *Crissman,* 23 Mich. 217; *Waterman* v. *Seeley,* 28 Mich. 77; *Van Wert* v. *Chidester,* 31 Mich. 207; *O'Neil* v. *Greenwood,* 106 Mich. 572; *Hamilton* v. *Hall's Estate,* 111 Mich. 291; *Mitchell* v. *Bilderback,* 159 Mich. 483.

"It is true that judges in speaking of the degree of truth (proof) advanced or needed on particular occasions, have sometimes used qualifying words not found in an exact statement of either of the rules just mentioned, but this has been done generally, if not always, either to mark a proposition with judicial emphasis, or denote the amount of evidence given or required in cases of discretion." *Aikin* v. *Weckerly,* 19 Mich. 482.

There is no rule of law or of judicial reasoning that adopts any sliding scale of belief in civil cases. *Elliott* v. *Van Buren,* 33 Mich. 49 (20 Am. Rep. 668). There are but two classes of cases recognized as requiring different rules of proof—criminal cases, where a conviction is warranted only by proof beyond a reasonable doubt; and cases not criminal, where a preponderance of proof satisfies the legal requirement. *Peoples* v. *Evening News Ass'n,* 51 Mich. 11. A preponderance of proof is all that is here required.

What is an agent?

"An agent is a person having express or implied authority to represent or act on behalf of another person, who is called his principal." Bowstead on Agency (4th Ed.), p. 1.

"An agent is one who acts for or in the place of another by authority from him; one who undertakes to transact some business or manage some affairs for another by authority and on account of

the latter, and to render an account of it.    He is a substitute, a deputy, appointed by the principal, with power to do the things which the principal may or can do."    2 C. J. S. p. 1025.

The term "agent" includes factors, brokers, etc. 2 C. J. S. p. 1025.

As said in *Saums* v. *Parfet,* 270 Mich. 165:

" ' "Agency" in its broadest sense includes every relation in which one person acts for or represents another by his authority.' 2 C. J. p. 419.

" 'Whether an agency has been created is to be determined by the relations of the parties as they in fact exist under their agreements or acts.'    21 R. C. L. p. 819.

" 'The characteristic of the agent is that he is a business representative.    His function is to bring about, modify, affect, accept performance of, or terminate contractual obligations between his principal and third persons.    To the proper performance of his functions, therefore, it is absolutely essential that there shall be third persons in contemplation between whom and the principal legal obligations are to be thus created, modified or otherwise affected by the acts of the agent.'    1 Mechem on Agency (2d Ed.), p. 21."

A broker is an agent with special and limited authority, one who is employed by another to negotiate for specific property with the custody of which he has no concern.    9 C. J. p. 508; 8 Am. Jur. p. 989.

The first and paramount duty of an agent is loyalty to his principal.    *Moore* v. *Mandlebaum,* 8 Mich. 433; *People, ex rel. Plugger,* v. *Township Board of Overyssel,* 11 Mich. 222; *McNutt* v. *Dix,* 83 Mich. 328 (10 L. R. A. 660); *McDonald* v. *Maltz,* 94 Mich. 172 (34 Am. St. Rep. 331); *Phinney* v. *Hall,* 101 Mich. 451; *Barrett* v. *Miller,* 144 Mich. 454; *Hogle* v. *Meyering,* 161 Mich. 472; *Brown* v. *Hurt,* 198 Mich. 276; *McLennan* v. *Cole,* 224 Mich. 225.; *Beers* v. *Penn Mutual Life Ins. Co.,* 264 Mich. 228.    He that acts fraudulently acts in vain.    An agent to purchase hay cannot purchase and get title to hay which he was under obligation to purchase for his principal. *Kert* v. *Endelman,* 202 Mich. 289, citing 2 C. J. p. 705; *Pikes Peak Co.* v. *Pfuntner,* 158 Mich. 412.

"One occupying a confidential and fiduciary relation to another is held to the utmost fairness and honesty in dealing with the party to whom he stands in that relation. *Torrey* v. *Toledo Portland Cement Co.*, 158 Mich. 348." *Pikes Peak Co.* v. *Pfuntner, supra.*

" 'Except with the full knowledge and consent of his principal, an agent authorized to buy for his principal cannot buy of himself; an agent authorized to sell cannot sell to himself; an agent authorized to buy or sell for his principal cannot buy or sell for himself; nor can an agent take advantage of the knowledge acquired of his principal's business to make profit for himself at his principal's expense.

" 'The same rule applies to leases, and other similar transactions.' Mechem's Outlines of Agency, (1901 Ed.) § 148," quoted with approval in *Pikes Peak Co.* v. *Pfuntner, supra.*

An agent to pay taxes and redeem land may not acquire title in his own name. *Backus* v. *Cowley*, 162 Mich. 585; *Kimball* v. *Ranney*, 122 Mich. 160 (46 L. R. A. 403, 80 Am. St. Rep. 548).

"It is a general principal of equity that if an agent acquire any pecuniary advantage to himself from third parties by means of his fiduciary character, he is accountable to his employer as a trustee for the profit that he has made." Maitland's Equity (2d Ed.), p. 81.

All the knowledge of the agent belongs to the principal for whom he acts. If the agent uses it for his own benefit, he will become a trustee for his principal. 1 Perry on Trusts and Trustees (6th Ed.), p. 355, § 206.

"It is the duty of an agent in all transactions concerning or affecting the subject matter of the agency, to act with the utmost good faith and loyalty to

further the principal's interest." 3 C. J. S. § 138, p. 6.

"This principle is sedulously applied and an agent's acts which tend to violate his fiduciary duty are considered in the light of frauds upon confidence bestowed, and are not only invalid as to the principal, but are also against public policy." 3 C. J. S. § 138, p. 7.

"An agent cannot properly possess any individual interests or represent any interests adverse to those of his principal in transactions which involve the subject matter of the agency, without the full knowledge and consent of his principal." 3 C. J. S. § 139, p. 9.

"In the absence of full knowledge and consent on the part of his principal, an agent may not acquire any right or title in the subject matter of the agency by the use of his position or any information acquired by him during the course of his employment." 3 C. J. S. § 140, p. 12.

"An agent employed to purchase property on behalf of his principal cannot purchase the same for himself." 3 C. J. S. § 144c., p. 24.

"Whenever one person is placed in a relation to another, by the act or consent of that other, or the act of a third person, or of the law, so that he becomes interested for him or with him in any subject of property or business, he will in equity be prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has been associated." 1 Perry on Trusts and Trustees (6th Ed.), p. 355, § 206.

No one may take advantage of his own wrong. Void things are no things. He that is guilty of inequity appeals in vain to equity.

"We turn now to constructive trusts. Under this head Mr. Lewin treats of but one grand rule. It is

this: that wherever a person clothed with a fiduciary character gains some personal advantages by availing himself of his situation as a trustee, he becomes a trustee of the advantage so gained." Maitland's Equity (2d Ed.), p. 80.

"A constructive trust is raised by a court of equity wherever a person, clothed with a fiduciary character, gains some personal advantage by availing himself of his situation as trustee; for as it is impossible that a trustee should be allowed to make a profit by his office, it follows that so soon as the advantage in question is shown to have been acquired through the medium of a trust, the trustee, however good a legal title he may have, will be decreed in equity to hold for the benefit of his *cestui que trust*." Lewin on Trusts (13th Ed.), p. 191.

" 'Trusts,' in the broadest sense of the definition, embrace not only technical trusts but also obligations arising from numerous fiduciary relationships, such as agents, partners, bailees, etc." *Rothschild v. Dickinson,* 169 Mich. 200.

One may become constructive trustee, bound by the trust, without desiring to become a trustee and though he wishes to escape such obligation. Maitland's Equity (2d Ed.), p. 83.

Lewin, adopting Coke's definition of a use, defines a trust:

"A confidence reposed in some other, not issuing out of the land, but as a thing collateral, annexed in privity to the estate of the land, and to the person touching the land, * * * for which *cestui que trust* has no remedy but by subpœna in chancery." Lewin on Trusts (13th Ed.), p. 11.

This definition is approved by Maitland's Equity (2d Ed.), p. 43, and 1 Perry on Trusts and Trustees (6th Ed.), p. 10, § 13.

"Constructive trusts arise purely by construction of equity independently of any actual or presumed

intention of the parties to create a trust and are generally thrust on the trustee for the purpose of working out the remedy. They are said to arise from actual fraud, constructive fraud and from some equitable principle independent of the existence of any fraud." *Quinn v. Phipps,* 93 Fla. 805, 813 (113 South. 419, 54 A. L. R. 1173), citing 26 R. C. L. p. 1232.

"The term 'fiduciary' or 'confidential' relation, * * * is a very broad one. It has been said that it exists, and that relief is granted, in all cases in which influence has been acquired and abused—in which confidence has been reposed and betrayed. The origin of the confidence and the source of the influence are immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in and relies upon another." *Beach v. Wilton,* 244 Ill. 413 (91 N. E. 492).

See, also, *Quinn v. Phipps, supra;* and 2 Pomeroy's Equity Jurisprudence (3d Ed.), § 956.

"The existence of such a fiduciary relation as that of principal and agent precludes the latter for [from?] taking advantage of his employer or to use any knowledge acquired by such relation to his injury and the personal pecuniary advantage of the agent at his employer's expense." *Fulton v. Clewiston, Ltd.,* 100 Fla. 257 (129 South. 773).

If the matter relates to one of agency and the agent takes a conveyance in his own name, he will be held to be a trustee *ex maleficio.* 1 Perry on Trusts and Trustees (6th Ed.), p. 355, § 206.

"While the term 'constructive trust' has been broadly defined as a trust raised by construction of law, or arising by operation of law, as distinguished from an express trust, in a more restricted sense and contradistinguished from a resulting trust it

has been variously defined as a trust not created by any words, either expressly or impliedly evincing a direct intention to create a trust, but by the construction of equity in order to satisfy the demands of justice; one not arising by agreement or intention, but by operation of law; or one that arises when a person clothed with some fiduciary character, by fraud or otherwise gains some advantage to himself. By some of the authorities constructive trusts are defined to be trusts that arise from some equitable principle independent of the existence of fraud; however, by the classification followed by most authorities these trusts are denominated resulting trusts. Constructive trusts are also called trusts *ex maleficio,* trusts *ex delicto,* trusts *in invitum,* or involuntary trusts.'' 65 C. J. pps. 223–225.

In *Weir* v. *Union Trust Co.,* 188 Mich. 452, it is said:

"Constructive trusts arise by operation of law. The following is found in 39 Cyc. p. 169:

" 'Constructive trusts do not arise by agreement or from intention, but by operation of law; and fraud, active or constructive, is their essential element. Actual fraud is not necessary, but such a trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by him who holds the legal title. Constructive trusts have been said to arise through the application of the doctrine of equitable estoppel, or under the broad doctrine that equity regards and treats as done what in good conscience ought to be done. Such trusts are also known as trusts *ex maleficio* or *ex delicto,* or involuntary trusts, and their forms and varieties are practically without limit, being raised by courts of equity whenever it becomes necessary to prevent a failure of justice.'

"Also, the following, in 15 Am. & Eng. Enc. Law (2d Ed.), p. 1123:

" 'Implied trusts, properly speaking, are such only as arise by operation of law as contradistinguished from such as arise by properly executed agreements of the parties. They are raised by law for the purpose of carrying out the presumed intention of the parties, or, without regard to such intention, for the purpose of asserting equitable rights of parties or frustrating fraud, and include the two classes of trusts known generally as resulting and constructive trusts.'

"As the author in the first quotation says, this form of trust is practically without limit, and is raised by a court of equity whenever, in the opinion of the court, it becomes necessary to prevent a failure of justice."

"In these decisions emphasis is laid on the breach of the fiduciary relationship on the part of the agent, and on the general doctrine that any fiduciary who acquires property in violation of his fiduciary obligations may be charged as a constructive trustee of it for his principal. He is under a duty to act solely for his principal while in this intimate relationship.

" 'The controlling question in this case *is not whether the principal advanced the purchase money or not, but it is whether in equity and good conscience the agent who in fact purchased the property with his own money in his own name, in violation of his agreement with his principal and in abuse of the confidence reposed in him by his principal, can be allowed to retain the fruits of his perfidy.*' [1] 'He (the principal) is seeking to enforce what he claims is a trust which arises or results from an abuse of the confidential relations existing between him and the defendant * * * by virtue of their contract of agency' " [2]. * * *

"The agent does not contract that he will pass an interest in land from himself to the principal, but merely that he will procure such a transfer from a third party." 3 Bogert on Trusts and Trustees (1st Ed.), p. 1534 *et seq.* § 487.

"It is a general rule that one who occupies a confidential or fiduciary relation to another in respect of business or property, and who by the use of knowledge obtained through such relation, or by the betrayal of the confidence reposed in him or some breach of duty imposed upon him under it, acquires title to or an interest in the subject-matter of the transaction antagonistic to that of his correlate

[1] This quotation was taken from *Rose* v. *Hayden,* 35 Kan. 106, 118 (10 Pac. 554, 57 Am. Rep. 145).—REPORTER.

[2] This quotation was taken from *Johnson* v. *Hayward,* 74 Neb. 157, 162 (103 N. W. 1058, 107 N. W. 384, 5 L. R. A. [N. S.] 112, 12 Ann. Cas. 800).—REPORTER.

holds such title or interest subject to a constructive trust in the latter's favor." 65 C. J. p. 476.

"Under the general rule relating to the violation of a confidential or fiduciary relation, an agent undertaking any business or the performance of any services for another is disabled in equity from dealing with the subject matter of the agency upon his own account or for his own benefit, and if he does attempt so to deal in his own name he will be deemed a constructive trustee for his principal." 65 C. J. p. 480.

"A constructive trust is imposed not because of the intention of the parties but because the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property. A constructive trust, unlike an express trust or resulting trust, is remedial in character." 2 Restatement of the Law of Trusts, p. 1249.

This is the rule here. *Judd* v. *Judd*, 192 Mich. 198; *McIntyre* v. *McIntyre, supra.*

"Where a person acquires the legal estate in property as the agent of another, or upon trust and confidence that he will acquire it for the benefit of another, equity will imply a trust in favor of the latter. Thus, where one employed to act as agent of another in the purchase of property takes title in himself, he will be considered in equity as holding the property in trust for his principal, even though he makes the purchase with his own money, in such case being entitled, in connection with the enforcement of the trust, to reimbursement of his proper expenditures." 65 C. J. pps. 481, 482.

In *Moore* v. *Mandlebaum, supra,* the court pointed out that one who had consented to act as an agent sustained a confidential relation to his principal, and "was bound to the utmost degree of good faith, and

had no right, while professing to act in that capacity, to make himself the agent of other parties for the purchase of the lands he was authorized by the plaintiff to sell; nor to take any advantage of the confidence his position inspired to obtain the title himself. Nor could he make a valid purchase from his principal, while that confidential relation existed, without fully and fairly disclosing to his principal all the propositions he had received, and all the facts and circumstances within his knowledge, in any way calculated to enable his principal to judge of the propriety of such sale."

The rule of this case was reaffirmed in *Beedle* v. *Crane,* 91 Mich. 429, and *Salliotte* v. *Dollarhite,* 211 Mich. 269.

"When it is shown that title has been obtained through fraud, misrepresentation, concealment, undue influence, duress, taking advantage of one's weakness, or necessities, or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property, and there are no intervening rights of *bona fide* purchasers, equity will impress a constructive trust on the property and turn it over to the one to whom it rightfully belongs." *Racho* v. *Beach,* 254 Mich. 600.

It has been frequently applied in cases of agents who took advantage of their fiduciary relationship and thus secured the property of their principals. *Moore* v. *Mandlebaum, supra; Beedle* v. *Crane, supra; Salliotte* v. *Dollarhite, supra; Racho* v. *Beach, supra.*

The essence of the right asserted is that defendants have obtained and hold a claim of paper title which they have no right to assert or retain against plaintiff and that they must be considered as holding

in trust for him and under an equitable duty to release to him on just terms. The principle is clear. *Adams* v. *Bradley,* 12 Mich. 346; *Jones* v. *Smith,* 22 Mich. 360; *Crooks* v. *Whitford,* 40 Mich. 599. A title acquired by defendant in fraud of the true owner is held by him as trustee *ex maleficio. Loomis* v. *Roberts,* 57 Mich. 284; *Carrier* v. *Heather,* 62 Mich. 441; *Pierce* v. *Pierce,* 55 Mich. 629; *Tompkins* v. *Hollister,* 60 Mich. 470; *Edwards* v. *Michigan Tontine Investment Co.,* 132 Mich. 1, and cases there cited; *Fred Macey Co.* v. *Macey,* 143 Mich. 138 (5 L. R. A. [N. S.] 1036); *Morris* v. *Vyse,* 154 Mich. 253 (129 Am. St. Rep. 472); *Smith* v. *Maxey,* 186 Mich. 151; *Kert* v. *Endelman,* 202 Mich. 289; 3 Pomeroy's Equity Jurisprudence (3d Ed.), § 1053. In *Lees* v. *Nuttall* (1829), 1 Russ & M. 53 (39 Eng. Rep. 21), Lees, having agreed to purchase an interest in real estate, went to Nuttall and instructed him to draw an agreement of purchase and procure the vendor's signature thereto. Nuttall had for some time been negotiating to purchase the property on his own account. He did not profess any unwillingness to act for Lees, nor disclose to him he was negotiating for the purchase of the property on his own account. Nuttall entered into a written agreement with the vendor to purchase in his own name, and not in that of Lees. Nuttall said he did not consider himself as attorney for Lees. The master of the rolls, on the ground that Nuttall had been employed as agent for the purchase of the estate, made decree against Nuttall, which was affirmed.

"Fraud, accident, or mistake in the procurement or creation of the legal title, by which the title which should have been taken to the equitable claimant was taken by the alleged trustee, gives rise to a construc-

tive trust in favor of the former." 3 Reed on Statute of Frauds (1st Ed.), § 927, p. 31.

"One who undertakes to act as agent for another cannot be permitted to deal in the matter upon his own account and for his own benefit, and if he takes land in his own name he will in equity be considered as holding it in trust for his principal." 3 Reed on Statute of Frauds (1st Ed.), § 959, p. 61.

"A trust may arise *ex maleficio,* in which equity turns the fraudulent procurer of the legal title into a trustee to get at him. * * * Equity does not intervene to uphold or enforce a parol trust, but to relieve against the fraud which has been perpetrated, by raising an implied trust; and it will treat the person who perpetrated the fraud as a trustee, not by virtue of the parol agreement, but as a trustee *ex maleficio* on account of the fraud." Waterman, Specific Performance (1st Ed.), § 251, p. 341.

"If one takes a title in his own name, whilst acting as agent, trustee or guardian, or in any other fiduciary capacity, a court of equity will, upon a showing of the fact in an appropriate proceeding, subject the lands to proper trusts in his hands or compel him to transfer the title to the party equitably entitled to it. Nor does it matter whether the party takes the title in his own name in good faith, under the belief that he can thereby better manage the property to the advantage of those for whom he is acting, or in compliance with their wishes, or whether from an intention to defraud them of their rights therein. In either case a court of equity will control the legal title so as to protect the just rights of the true owner. * * * All this is but common knowledge, and the doctrine is constantly invoked for the protection of the rights of parties against the mistake, accident or fraud of agents or parties acting in a fiduciary capacity, and little difficulty is experienced in enforcing it, where the property held

is not claimed under the adjudication of a court or other tribunal affirming the title of the holder." *Sanford* v. *Sanford,* 139 U. S. 642 (11 Sup. Ct. 666).

"It is familiar doctrine that a party who acquires title to property wrongfully may be adjudged a trustee *ex maleficio* in respect to that property.

"In 1 Pomeroy Equity Jurisprudence (2d Ed.), § 155, the author says, citing many cases: 'If one party obtains the legal title to property, not only by fraud or by violation of confidence or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner.' " *Angle* v. *Railway Co.,* 151 U. S. 1 (14 Sup. Ct. 240).

The oral agreement made between Stephenson and Golden through Rood, as set forth in the bill of complaint, established by the proof and found by the court, was not void and unenforceable because contrary to the statute of frauds.

"No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, *unless by act or operation of law,* or by a deed or conveyance in writing." 3 Comp. Laws 1929, § 13411.

"It is the settled doctrine of the court that where a conveyance is obtained for ends which it regards as fraudulent or under circumstances it considers as fraudulent or oppressive by instant or immediate consequence, the party deriving title under it will be converted into a trustee, in case that construction is needful for the purpose of administering adequate

relief; and the setting up the statute of frauds by the party guilty of the fraud or misconduct in order to bar the court from effective interference with his wrong-doing, will not hinder it from forcing on his conscience this character as a means to baffle his injustice or its effects.   2 Comp. Laws 1871, §§ 4692, 4693; 1 Story Equity Jurisprudence (12th Ed.), §§ 330, 333; 2 Story Equity Jurisprudence (12th Ed.), §§ 1254, 1265; 1 Spence's Equity Jurisprudence, p. 511; 2 Spence's Equity Jurisprudence, pp. 194, 294 *et seq.;* Hill on Trustees, p. 144; *Mestaer* v. *Gillespie,* 11 Ves. Jr. 621 (32 Eng. Rep. 1230); *Pickett* v. *Loggon,* 14 Ves. Jr. 215, 234 (33 Eng. Rep. 503); *Barnesly* v. *Powel,* 1 Ves. Sr. 284, 289 (27 Eng. Rep. 1034); *Young* v. *Peachy,* 2 Atk. 254, 257 (26 Eng. Rep. 557); *Brown* v. *Lynch,* 1 Paige (N. Y.), 147; *Hutchins* v. *Lee,* 1 Atk. 447 (26 Eng. Rep. 284); *Wolford* v. *Herrington,* 74 Pa. 311 (15 Am. Rep. 548); *Gregory* v. *Williams,* 3 Mer. 582 (36 Eng. Rep. 224).''   *Huxley* v. *Rice,* 40 Mich. 73.

''The statutory requirement that a trust must be created by a written instrument, does not apply to such a case, since trusts *ex maleficio* are either expressly or tacitly excepted from its provisions.'' Pomeroy's Specific Performance (3d Ed.), p. 375, § 144.

''Inasmuch as constructive trusts arise by construction or operation of law and not by agreement or intention, the statute of frauds, and statutes prohibiting parol trusts, have no application to such trusts, and do not prevent the establishment or enforcement thereof, since such statutes are meant to prevent frauds and not to encourage them, and a court of equity will not permit a person to shield himself behind the statute of frauds in order to perpetrate a fraud.   So it is frequently said that a constructive trust may be established by parol evidence.''   65 C. J. pp. 459–461.

"There are two principles upon which a court of equity acts in exercising its remedial jurisdiction. * * * One is that it will not permit the statute of frauds to be used as an instrument of fraud; and the other, that when a person through the influence of a confidential relation acquires title to property, or obtains an advantage which he cannot conscientiously retain, the court, to prevent the abuse of confidence, will grant relief. * * * The principle, that when one uses a confidential relation to acquire an advantage which he ought not in equity and good conscience to retain, the court will convert him into a trustee, and compel him to restore what he has unjustly acquired, or seeks unjustly to retain, has frequently been applied to transactions within the statute of frauds." *Quinn* v. *Phipps, supra.*

See, also, *Wood* v. *Rabe,* 96 N. Y. 414 (48 Am. Rep. 640).

Courts of equity have dealt boldly with section 7,* saying that the statute of frauds is not to be made a cover or cloak for fraud. Maitland's Equity (2d Ed.), pp. 59, 60.

"The court will not allow the statute of frauds, the wills act or any other statute to be used as an instrument of fraud." Lewin on Trusts (13th Ed.), p. 208.

"As the statute was directed against frauds and perjuries, it is obvious that resulting trusts were not within the mischief intended to be remedied. The aim of the legislature was, not to disturb such trusts as were raised by maxims of equity, and so could not open a door to fraud or perjury, but, by requiring

---

* Of 29 Car. II, chap. 3 (1677), reading as follows: "And be it further enacted by the authority aforesaid, that from and after the said four and twentieth day of June all declarations or creations of trusts or confidences of any lands, tenements or hereditaments, shall be manifested and proved by some writing signed by the party who is by law enabled to declare such trust, or by his last will in writing, or else they shall be utterly void and of none effect."—Reporter.

the creation of trusts by parties to be manifested in writing, to prevent that fraud and perjury to, which the admission of parol testimony had hitherto given occasion. And the enactment itself is applicable only to this view of the subject; for the legislature could scarcely direct that 'all declarations or creations of trusts should be manifested and proved,' etc., unless the trusts were in their nature capable of manifestation and proof; but, as resulting trusts are the effect of a rule of law, to prove them would be to instruct the court in its own principles, to certify to the judge how equity itself operates. The exception could only have been inserted *ex majore cautela* that the extent of the enactment might not be left to implication.'' Lewin on Trusts (13th Ed.), p. 206.

The statute of frauds is no defense to fraud. *Linsley* v. *Sinclair,* 24 Mich. 380; *McCreary* v. *McCreary,* 90 Mich. 478; *Connolly* v. *Keating,* 102 Mich. 1; *Backus* v. *Cowley,* 162 Mich. 585; *Vande Berg* v. *Vanden Bosch,* 242 Mich. 37. The defense of the statute of frauds is not available to an agent who purchases in his own name, without knowledge or consent of his principal, State tax lands which he has been directed to redeem on behalf of the owner, and such a purchase is a fraud on the principal and will be governed by the exception to the statute prohibiting resulting trusts. *Backus* v. *Cowley, supra.* Section 12973, 3 Comp. Laws 1929, applies only where the conveyance is made to the alienee by the consent of the party paying the consideration and does not apply in cases where the deed has been taken by mistake or where fraud exists. *Stansell* v. *American Radiator Co.,* 163 Mich. 528; *Thompson* v. *Marley,* 102 Mich. 476. Where a fraud exists, relief is granted under compiler's section 12975 as an exception to section 12973 which was never intended to

legalize proceedings for the benefit of a grantor in fraud of others; and it has no application to a case where one has taken a deed in his own name in fraud of the rights of another, nor to a case where, though no fraud is designed, the conveyance has been made to some person other than the purchaser without his consent. *Fisher* v. *Fobes,* 22 Mich. 454; *McCreary* v. *McCreary, supra; Connolly* v. *Keating, supra.* The statute of frauds cannot be relied upon as a protection to wrongdoers. 27 C. J. p. 307.

"The statute of frauds is no obstacle in the way of proof of an actual or constructive fraud in the sale of property. Parol evidence is admissible to establish a trust, even against a deed absolute on its face, if it would be a fraud to set up the form of the deed as conclusive." 1 Perry on Trusts and Trustees (6th Ed.), § 226.

The principle above discussed of the inapplicability of the statute of frauds to the establishment by parol evidence of constructive, implied, or resulting trusts or trusts *ex maleficio,* is mentioned in Fonblanque's Equity (4th Am. Ed.), p. 31; Bigelow on Equity (1st Ed.), p. 55; 1 Beach on Modern Equity Jurisprudence, § 224; 26 R. C. L. p. 1236; 22 Central Law Journal p. 393; 3 Law Magazine p. 131; *State* v. *Phoenix Mutual Life Ins. Co.,* 114 W. Va. 109 (170 S. E. 909, 91 A. L. R. 1482).

Section 12972, 3 Comp. Laws 1929, provides:

"The preceding sections of this chapter shall not extend to trusts arising or resulting by implication of law."

"Implied and resulting trusts are expressly saved by our statutes, except in cases arising under section 5569 of Howell's * statutes." *Ripley* v. *Seligman,* 88 Mich. 177, 194.

---

\* The same as 3 Comp. Laws 1929, § 12973.—REPORTER.

"In construing the language of the statutes together, implied or resulting trusts may be established by proving the transaction out of which they result or are implied, *and such proof may be by parol testimony.*" *Ripley* v. *Seligman, supra,* citing 1 Perry, Trusts (1st Ed.), §§ 137, 139.

"By How. Stat. § 5563,* all trusts are abolished, except such as are authorized in the chapter relating to uses and trusts. Trusts arising or resulting by implication of law are saved in express terms." *Shafter* v. *Huntington,* 53 Mich. 310.

"*Bartlett* v. *Pickersgill,* 1 Eden, 515 (28 Eng. Rep. 785), the leading early English case on this point, was decided in 1760, and the doctrine announced therein appears to have continued to be the law in England till 1829, when it was repudiated in *Lees* v. *Nuttall,* 1 Russ. & M. 53 (39 Eng. Rep. 21), where it was held that if an agent employed to purchase an estate becomes the purchaser for himself, he is to be considered as a trustee for his principal. *Lees* v. *Nuttall* was affirmed in 2 My. & K. 819 (39 Eng. Rep. 1157), where the agency was created wholly by parol. Supporting this view in *Heard* v. *Pilley,* L. R. 4 Ch. App. 548, 552 (38 L. J. [N. S.] Ch. 718, 21 L. T. 68, 17 W. R. 750), another English case in which the agent was appointed by parol, the Lord Chancellor in part said:

" 'I cannot at all accede to the argument urged in reply, that under these circumstances when the agent goes to his principal and says, "I will go and buy an estate for you," it is not a fraudulent act on his part afterward to buy the estate for himself and to deny the agency. I think that would be an attempt to make the statute of frauds an instrument of fraud.'

"A casual review of the law governing this element of defense impels the conclusion that under the early English rule Quinn's agreement to purchase for Phipps, would not have created a constructive trust in favor of Phipps, which conclusion is sup-

* The same as 3 Comp. Laws 1929, § 12967.—REPORTER.

ported by some of the cases in this country predicated on statutes of frauds which prohibit proof of a constructive trust by parol, but such cases are not binding here, because by the terms of the statute of frauds in this State a constructive trust may be proved by parol. The early English rule is repudiated by all. the late English cases and the modern current of authority both in this country and in England is to the effect that if an agent be employed to negotiate the purchase of land for his principal, and violates the principal's confidence by purchasing the land with his own money, and taking a deed therefor to himself, he becomes a constructive trustee for the principal's benefit, upon payment of the purchase price. *Boswell* v. *Cunningham*, 32 Fla. 277 (13 South. 354, 21 L. R. A. 54); *Patrick* v. *Kirkland*, 53 Fla. 768 (43 South. 969, 125 Am. St. Rep. 1096, 12 Ann. Cas. 540); *Skinner Manfg. Co.* v. *Douville*, 57 Fla. 180 (49 South. 125); 21 R. C. L., p. 829; *Harrop* v. *Cole*, 85 N. J. Eq. 32 (95 Atl. 378); *Young* v. *Hughes*, 32 N. J. Eq. 372; *Rose* v. *Hayden*, 35 Kan. 106 (10 Pac. 554, 57 Am. Rep. 145) (and cases cited); *Fox* v. *Simons*, 251 Ill. 316 (96 N. E. 233); *Johnson* v. *Hayward*, 74 Neb. 157 (103 N. W. 1058, 107 N. W. 384, 5 L. R. A. [N. S.] 112, 12 Ann. Cas. 800); *Trice* v. *Comstock*, 57 C. C. A. 646 (121 Fed. 620, 61 L. R. A. 176); *Rogers* v. *Genung*, 76 N. J. Eq. 306 (74 Atl. 473); *Gardner* v. *Ogden*, 22 N. Y. 327 (78 Am. Dec. 192); *Jaeger Co.* v. *Hannan*, 90 N. J. Eq. 396 (108 Atl. 1); *Brookings Land & Trust Co.* v. *Bertness*, 17 S. D. 293 (96 N. W. 97); *Wood* v. *Rabe*, 96 N. Y. 414 (48 Am. Rep. 640); *Bachrach* v. *Fleming*, 269 Pa. 350 (112 Atl. 445); *Beach* v. *Wilton*, 244 Ill. 413 (91 N. E. 492); *Wright* v. *Smith*, 23 N. J. Eq. 106; *Chastain* v. *Smith*, 30 Ga. 96. In the last named case the Georgia statute of frauds is similar to ours, and among other things the Court said:

" 'Where one person agrees, as agent, to buy land for another as his principal, and does' buy it, but takes the title in his own name,

this title in his hands stands affected with a resulting trust for the benefit of the principal by operation of law, and the case is not within the statute of frauds, resulting trusts being expressly excepted from the operation of the statute.' " *Quinn* v. *Phipps, supra,* 817–819.

It is claimed there can be no recovery because of the statute requiring agency contracts for the sale of any interest in real estate to be in writing. The statute, 3 Comp. Laws 1929, § 13417, provides:

"In the following cases specified in this section, every agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof be in writing and signed by the party to be charged therewith," etc.,

and subdivision (5) following is:

"Every agreement, promise or contract to pay any commission *for or upon the sale* of any interest in real estate."

Before the enactment of subdivision (5) of section 13417 above, the general statute of frauds had no application to the promise to a real estate broker to pay him for negotiating a sale or purchase of land. In such case, the broker has no interest in the land either before or after the transaction, the promise being merely one to pay for work and labor. 2 Reed on Statute of Frauds (1st Ed.), p. 476, § 756, citing many cases; 29 Am. & Eng. Enc. of Law (2d Ed.), p. 802, and cases cited; Wood on Statute of Frauds, p. 44, § 16. The provisions of subdivision (5) of section 13417, 3 Comp. Laws 1929, are in derogation of the common law and to be strictly construed. In *Slocum* v. *Smith,* 195 Mich. 281, this statute was construed to apply to agreements to purchase as well as to sell land. But in *Smith* v. *Starke,* 196 Mich. 311, the court held the terms of the statute were plain and unambiguous and not subject to con-

struction, that the courts have nothing to do but to obey it. In *Mullholland* v. *Patch,* 205 Mich. 490 (18 A. L. R. 468), it was held the statute did not apply to a verbal agreement to secure options on real estate. Generally, a statute like that above quoted "relating only to contracts for compensation to an agent for the sale of land for his principal does not affect an agreement for compensating an agent for services rendered in the acquisition or purchase of land for his principal." 8 Am. Jur. p. 1002.

All the discussion and citation of authorities in relation to the statute of frauds and the statute of uses and trusts only amplifies what is apparent from the statutes. 3 Comp. Laws 1929, § 13411, expressly excepts estates and interests in lands, and trusts and powers over or concerning lands, or in any manner relating thereto, which may be created *"by act or operation of law."* The statute of uses and trusts by which they are abolished, except as authorized by R. S. 1846, chap. 63 (3 Comp. Laws 1929, chap. 252), being 3 Comp. Laws 1929, § 12972, provides:

"The preceding sections of this chapter shall not extend to trusts arising or resulting by implication of law."

Section 13417, 3 Comp. Laws 1929, does not cover the employment of agents to purchase but only to sell lands, has no application to the employment of agents to procure options on land, and cannot be drawn upon to cover fraud. It is a part of the statute of frauds and, as pointed out in Lewin on Trusts (13th Ed.), p. 208, a court of equity will not allow any statute to be made an instrument of fraud. It is inserted to show that a resulting trust, constructive trust, implied trust, or trust *ex maleficio* arises by act or operation of law or results from implica-

tion of law according to the established rules of equity which have heretofore prevailed in England and in a great majority of American states.

In *Rose* v. *Hayden,* 35 Kan. 106 (10 Pac. 554, 57 Am. Rep. 145), plaintiff, desiring to purchase real estate, employed defendant to negotiate for the same. The agreement was in parol. Later, defendant informed plaintiff he had purchased the lots in his own name and paid $85 therefor. Plaintiff tendered defendant $110 and demanded a deed which defendant refused to give, and plaintiff brought ejectment. It was said:

"In this State, the action of ejectment is an equitable remedy as well as a legal remedy. * * * The defendant with his partner was the agent of the plaintiff to carry on negotiations for the purchase of the lots * * * under the directions and instructions of the plaintiff and for the plaintiff. Under such circumstances, could the defendant purchase the property for himself, in his own name and with his own money, and take the title to himself, without becoming a trustee for the plaintiff? * * * Plaintiff in the present case does not claim to have any interest in the real estate in controversy except such as arises by operation of law. He does not claim any interest in the real estate in controversy by virtue of *the express terms* of any contract, written or oral. There was no contract, written or oral, that purported to transfer the property, or any interest therein to the plaintiff. Nor did the plaintiff employ the defendant to take or hold the title to the property, either for the plaintiff or for the defendant, nor with or without the defendant's own money. He simply employed the defendant by a simple parol contract to negotiate for the purchase of the real estate for the plaintiff, and of course the plaintiff expected to pay for it himself, and to take the title

to himself, and to take such title by a formal and valid written instrument; and when the defendant took the title in the defendant's own name, instead of following the terms of the contract between himself and the plaintiff, he violated the terms of his contract, and abused the confidence reposed in him by the plaintiff. * * * The contract between the plaintiff and the defendant, constituting the defendant the agent of the plaintiff, was not 'a contract for the *sale* of lands, tenements or hereditaments, or any interest in or concerning them,' but it was simply a contract making the defendant *an agent* to negotiate for the *purchase* of lands. * * * The defendant also urges, in connection with the statute of frauds and the fact that the plaintiff did not advance the purchase-money, the further facts that the plaintiff has never had the possession of the property in controversy and has never made any improvements thereon. We do not think that these further facts can make any difference.''

An agent who renders his services gratuitously is not ''at liberty to withhold from his agency the exercise of the skill and knowledge which he held himself out to possess.'' *Isham* v. *Post,* 141 N. Y. 100 (35 N. E. 1084, 23 L. R. A. 90, 38 Am. St. Rep. 766). ''Whether he (an agent) is engaged to effect a sale or a purchase, his employer is entitled to the benefit of his best judgment, knowledge, and skill, even though he is rendering his services gratuitously.'' 8 Am. Jur. p. 1041. These principles are sustained by 2 C. J. p. 717, approved in *Guggisberg* v. *Otsego County Co-operative Ass'n,* 258 Mich. 553. See, also, 3 C. J. S. p. 32, and cases cited; 31 Cyc. p. 1216. The essential principle of liability of a gratuitous agent is recognized in *Spencer* v. *Towles,* 18 Mich. 9, and in *Fisher* v. *Fobes, supra,* where the principal rested his interests with the agent solely on

the good will, good faith and sense of honor of the agent. It can make no difference whether Irving Golden was to be paid for his services or whether he volunteered to act gratuitously.

The bill of complaint alleges "the plaintiff now offers and stands ready and willing to do and perform in the premises, whatever to the court shall seem just and equitable." It was not necessary any money be paid by plaintiff in order to hold defendant Golden as a constructive trustee. He was a trustee *ex maleficio*. *Fisher* v. *Fobes, supra;* 1 Perry on Trusts and Trustees (6th Ed.), p. 355 *et seq.* § 206; 3 Bogert on Trusts and Trustees, p. 1531 *et seq.* § 487. It is a general rule:

"That the agent who has purchased for himself with his own money, where he should have bought for his principal with the latter's money, may be made a constructive trustee for the principal, if the agent is reimbursed for his expenditures." 3 Bogert on Trusts and Trustees (1st Ed.), p. 1534, § 487, and cases cited.

"The plaintiff contends that the statute of frauds is involved in this case. It is not. The question here involved is one of principal and agency. * * * It is immaterial that he received no consideration for acting as agent. It is just as immaterial that he advanced his own money with which to purchase the note and mortgage." *McCarty* v. *Palmer,* 110 Fla. 433 (148 South. 867).

"The fact of the agency being established, * * * if he did use his own funds for this payment, it would make no difference, for it is clear that an agent cannot acquire his principal's property by using his own funds to make what is in effect a redemption of the subject-matter of the agency. * * * There was no express trust, but a constructive one arising

from the conduct of David, and the confidential relation in which he stood to the plaintiff, and the statute of frauds has no application." *De Mallagh* v. *De Mallagh,* 77 Cal. 126 (19 Pac. 256).

"Some authorities hold that where the agent furnishes the purchase money with the consent of the principal, it will be construed as a loan, and the agent will hold the property purchased in trust for the principal as security to himself for the money advanced by him. *Rose* v. *Hayden,* 35 Kan. 106 (10 Pac. 554, 57 Am. Rep. 145). So far as we have been able to find, even those English and American cases which decline to engraft a constructive trust for the breach of a parol agreement to purchase for another hold that if the agent purchases in his own name with the money of his principal equity will raise a constructive trust in the purchase in favor of the principal. *Burden* v. *Sheridan,* 36 Iowa, 125 (14 Am. Rep. 505); *Pinnock* v. *Clough,* 16 Vt. 500 (42 Am. Dec. 521); *Nixon's Appeal,* 63 Pa. 279." *Quinn* v. *Phipps, supra,* 819.

"If an agent employed to purchase for another; purchases for himself, he will be considered as the trustee of his employer." *Quinn* v. *Phipps, supra,* 821.

"Even though he purchased with his own money, he will, nevertheless, be considered as holding the property in trust for his principal, and the latter, upon repaying or tendering him the amount of the purchase price and his reasonable compensation, may by proper proceeding in equity compel a conveyance to himself." 1 Mechem on Agency (2d Ed.), p. 869, § 1192, citing cases from Arkansas, California, Connecticut, Georgia, Illinois, Iowa, Kansas, Maine, Massachusetts, Minnesota, Mississippi, Missouri, Nebraska, New Jersey, New York, North Carolina, Pennsylvania, Texas, Virginia, Wisconsin, and the Supreme Court of the United States.

It is settled law that an agent who has been guilty of fraud in the transaction of his principal's business forfeits his rights to a commission as such. 3 C. J. S. pp. 77, 78, and cases cited. It is self-evident one should not be rewarded for violating the law. One who offends against the law may not have the help of the law. 2 Hale Pleas of the Crown (1st Am. Ed.), p. 386; Broom's Legal Maxims (9th Ed.), pp. 197, 207; 2 Bouvier's Law Dictionary (Rawle's 3d Rev.), p. 2135.

It is claimed defendant Golden never met plaintiff, never entered into any contract with him, and, therefore, cannot be held liable in this suit. Plaintiff contends the contract was made in his behalf by Rood although Rood may not have disclosed his principal, and that plaintiff, though an undisclosed principal, may maintain the suit.

In *Jenness* v. *Shaw,* 35 Mich. 20, Shaw recovered judgment for the value of certain logs furnished to Jenness who bought the logs from Phelps, an undisclosed principal of Shaw. The case was removed by writ of error. It is said:

"The errors alleged relate entirely to the charges of the court. Three of these related to the right of Shaw as an undisclosed principal, to sue on his agent's agreement. The court, on defendant's request, charged that Shaw could not recover if he had sold the logs to Phelps before the Phelps' sale to Jenness. This question being out of the way, and Shaw being the only person entitled, there can be no doubt of his right to sue upon a sale made by his agent, whether known to be such or not. The principle is well settled and elementary."

"It is well settled that, where an agent, acting within his authority as such, enters into a simple contract in his own name with a third person for the

benefit of his undisclosed principal, the contract inures to the benefit of the principal, and such principal may appear, claim the benefits of such contract, and sue in his own name for a breach of the contract or of a legal duty growing out of the same." *American Enameled Brick & Tile Co.* v. *Brozek,* 251 Mich. 7.

See, also, 21 R. C. L. pp. 897–899, § 72; 2 C. J. p. 873; 3 C. J. S. § 276, p. 209.

It is claimed plaintiff cannot maintain this suit in his own name because he acted, if at all, as receiver.

"The general rule is that an agent who receives money for his principal is estopped to deny the title, and must return or account for the money to him for whom he received it." *Moss Mercantile Co.* v. *First Nat'l Bank,* 47 Ore. 361 (82 Pac. 8, 2 L. R. A. [N. S.] 657, 8 Ann. Cas. 659).

"It is an elementary rule in the law of agency, applicable alike in civil and criminal proceedings, that the agent shall not be heard to deny the title of his principal." 21 R. C. L. p. 831.

It is no defense in an action by the principal for money collected by the agent, for the latter to show that it belonged to third parties. 1 Am. & Eng. Enc. of Law (2d Ed.), p. 1091.

"An agent's duty to his principal forbids him, when called upon to account for property or funds received by him from his principal or on his account, from disputing his principal's right or title thereto." 31 Cyc. pp. 1481, 1482.

An agent may not, by reason of his fiduciary relation, get possession of his principal's property and then claim exemption from restitution by pleading the principal's act was an illegal one. *Smith* v.

*Blachley,* 188 Pa. 550 (41 Atl. 619, 68 Am. St. Rep. 887).

In *Evans* v. *City of Trenton,* 4 Zabriskie (24 N. J. Law), 764, Evans was city treasurer. He performed extra services for the city and took compensation therefor. Such services were in violation. of the banking law. When suit was brought against him, he set up the illegality of the transaction as a defense. The court held (syllabus):

"The mere agent of a party to an illegal transaction cannot set· up the illegality of the transaction in a suit by his principal, to recover money that has been paid to such agent for his principal, on account of the illegal transaction."

In *Baldwin Brothers* v. *Potter,* 46 Vt. 402, Baldwin employed Potter to make candy sales in violation of a statute prohibiting lotteries. In a suit by the principal against the agent for the money received, the agent pleaded the illegality of the transaction by which he obtained the money. The court said:

"In other words, because my principal did not receive the money on a legal contract, I am at liberty to steal the money, appropriate it to my own use, and set my principal at defiance. We think the law is well settled otherwise."

"If a servant or agent of another has, in the prosecution of an illegal enterprise for his master, received money or other property belonging to the master, he is bound to turn it over to him, and cannot shield himself from liability therefor, upon the ground of the illegality of the original transaction." Wood on Master and Servant, § 202.

The cause of action here did not accrue to the person, persons or corporation of which plaintiff was receiver. It did not exist at the time plaintiff was

appointed receiver. It was something over which the court appointing him had no jurisdiction. As the arm of the court, he could not take it into possession as receiver at the time of his appointment because it did not then exist. The right of action accrued to plaintiff, as receiver, in the progress of administration. The suit was properly brought by plaintiff in his individual capacity and an order of the court was not necessary to authorize him to bring suit.

The rule that a receiver cannot sue in his own name is predicated upon the idea that a common-law receiver is a mere custodian of the property, and that courts of chancery when called upon to authorize their receivers to proceed in an action at law were necessarily compelled to conform to the rules of the common-law courts. But while a common-law receiver is not an assignee, it is an inaccurate statement of his relation to the property to say that he is a mere custodian. He is for the time being, and for the purpose of the administration of the assets, the real party in interest* and there is no reason why the suit should not be instituted in his own name. *Henning* v. *Raymond,* 35 Minn. 303 (29 N. W. 132).

In *Ex parte Harris,* 2 L. R. Ch. Div. 423 (34 L. T. 261), a receiver brought suit in his own name to recover the balance due on property sold by him as a receiver. The trial judge was of the opinion that the receiver could not issue a debtor's summons in respect of a sum due him in that capacity, and dismissed the summons. The court reversed the trial judge, with costs, holding appellant had a right to maintain the suit.

---

* See 3 Comp. Laws 1929, § 14010.—REPORTER.

In *Rochester Tumbler Works* v. *Mitchell Woodbury Co.,* 215 Mass. 194 (102 N. E. 438), the court pointed out that a receiver is appointed to preserve the title to property which is in litigation until it is determined to whom the property belongs, or in some cases to wind up the affairs of an insolvent corporation, reduce its property to cash, and distribute it among creditors.   The court said:

"But whichever of the two be the nature of a particular receivership, money due for a sale by the company before the receivership and money due for a sale by the receiver are quite different in character.  In case of a debt due the company for a sale made by it the receiver collects a chose in action of the company.  The chose in action is due under a contract made by the company subject to all equities by way of set-off or otherwise which exist between the company and the debtor.  In case of a company debt the receiver sues in the name of the company which was party to the contract unless the chose in action has been assigned to him and he is allowed by the law of the forum to bring an action as assignee in his own name.  But in case of a debt due for a sale made by a receiver, the receiver is the party to the contract of sale, the action for that reason must be brought in his own name and is not subject to any equities by way of set-off or otherwise which could be set up by the company.  The difference between the two is elementary and needs no citation of authorities in its support."

In *Daggett* v. *Gray,* 5 Cal. Unrep. 74 (40 Pac. 959), it is said:

"An executor, administrator, receiver, or other trustee may in like manner sue in his own name, where the contract sued on has been entered into with him, and no extrinsic facts need be alleged."

In *Wason* v. *Frank,* 7 Col. App. 541 (44 Pac. 378), suit was brought upon a contract entered into by the receiver. It is said:

"In his representative capacity he was the real party in interest, the suit could be brought and maintained only in his name, and a joinder of the Toll Road Company as a coplaintiff would have been improper."

In *Smith* v. *Rubin,* 239 Ill. App. 191, a receiver leased property and brought suit to recover unpaid rent. It was objected he would have to have the order of the court authorizing suit, etc. It is said:

"The contract upon which suit is brought, whether considered as express or implied, came into being as the result of the mutual acts of the receiver, *qua receiver,* and the defendant Sol Rubin. In this situation, it is only reasonable to consider the receiver, at least for purposes of obtaining the rent, or the charge for use and occupation, as having legal title to that for which he brought suit; and such being the case, it follows that it was not necessary for the receiver, before beginning suit, to obtain special authority or an express order of the court."

In *Pouder* v. *Catterson,* 127 Ind. 434 (26 N. E. 66), the general principles were again discussed. It is said:

"In the absence of authority derived from the statute or from the court ordering his appointment, a receiver has no power to sue in his own name, and that when his authority is derived from the order of the court, that fact must appear by suitable averments in the complaint. * * * Neither the reason nor the rule controls in case a receiver brings suit upon a contract made with him, or upon an obligation due to him as such. * * * Where property has been wrongfully taken from the possession of a receiver,

or where one holding under him as lessee or tenant, refuses to surrender, he is entitled to maintain an action to recover possession in his own name without an order of the court. * * * One who has taken a lease from and become the tenant of a receiver, is estopped to deny the title of his lessor while he remains in possession under the lease."

A receiver in chancery having been ordered by the chancellor to collect the notes and debts due to a partnership which the parties themselves were enjoined from collecting may maintain an action on such notes in his own name as the party really interested. *Leonard* v. *Storrs,* 31 Ala. 488.

Recovery of goods or damages for conversion thereof where the goods were taken out of the actual possession of the receiver may be had in an action by the receiver in his own name. *State, ex rel. Fichtenkamm,* v. *Gambs,* 68 Mo. 289; *Singerly* v. *Fox,* 75 Pa. 112; *Biggs* v. *Bowen,* 170 N. C. 34 (86 S. E. 692).

In *Biggs* v. *Bowen, supra,* Biggs was a receiver and brought suit against Bowen upon a contract entered into between plaintiff, as receiver, and Bowen. A question arose as to venue. Defendants contended the *situs* of the receivership governed. Plaintiff contended his own personal residence governed. It is said:

"The receiver in this case is the real party in interest within the meaning of the statute."

"When persons, other than the receiver, have property in their hands which should be in the hands of the receiver, or when any person diverts or attempts to divert from the receiver property which belongs to the receiver, such receiver may take all appropriate steps in law or equity to reduce such property to possession and protect it from being diverted from its lawful custodian." *Pontiac Trust Co.* v. *Newell,* 266 Mich. 490, 499.

The person who is vested with a right of action on a given cause of action may sue upon it in his own name, although the whole beneficial interest is in another. 47 C. J. p. 24. Recovery depends on proof of the legal plaintiff's claim and the right to its fruits is a matter resting between the legal and equitable plaintiffs, to be determined, if necessary, by the court; and this in no way concerns the defendant. *Sentinel Printing Co.* v. *Long,* 28 Pa. Super. 608.

"Where a receiver has been in possession of personal property, he may maintain in his own name actions for wrongs to his right of possession." 23 Am. & Eng. Enc. of Law (2d Ed.), p. 1074, citing *Singerly* v. *Fox, supra; Boyle* v. *Townes,* 9 Leigh (36 Va.), 158.

"Where a cause of action accrues to the receiver himself, he may sue in his own name to recover thereon." 34 Cyc. p. 386.

The general rule is thus stated in 53 C. J. p. 323:

*"Rights accruing to receiver.* Where a cause of action accrues to the receiver himself, he may and, indeed, must, sue in his own name to recover thereon."

The statute relied upon by appellees provides among other things:

"Every action shall be prosecuted in the name of the real party in interest, but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party expressly authorized by statute, may sue in his own name without joining with him the party for whose benefit the action is brought." 3 Comp. Laws 1929, § 14010.

If plaintiff was appointed receiver by the circuit court of Washtenaw county in the exercise of its inherent equity jurisdiction, the right of action alleged by plaintiff accrued to him in the administration of the receivership. He was the party who made the contract. He was the real party in interest. He not only had a right to begin suit in his own name, but by the great weight of authority it was his duty, if he brought suit, to begin it in his own name.

If plaintiff had been appointed a receiver in proceedings for the voluntary dissolution of a corporation, then, by the express terms of the statute, "suits may be brought and carried on by the receiver in his own name." 3 Comp. Laws 1929, § 15317.

If plaintiff had been appointed a receiver in proceedings brought for the purpose of winding up the corporation, then, as receiver, he had the same powers as a receiver in proceedings for the voluntary dissolution of a corporation. 3 Comp. Laws 1929, § 15323.

If plaintiff had been appointed receiver in proceedings in equity against a corporation, then he had by statute the same powers as a receiver appointed in case of the voluntary dissolution of a corporation. 3 Comp. Laws 1929, § 15337. And, by the express provisions of 3 Comp. Laws 1929, § 14010, plaintiff, being a person authorized by statute to sue in his own name, may maintain this suit.

"A statute authorizing the trustee of an express trust to sue without joining the beneficiary, and embracing a person making a contract for the benefit of another, permits the persons making a contract to sue alone where the contract is partly for the benefit of another." 47 C. J. p. 39.

See, also, *Graham* v. *Franke,* 4 Cal. Unrep. 899 (38 Pac. [2d] 455); *Cousar* v. *Heath, Witherspoon & Co.,* 80 S. C. 466 (61 S. E. 973).

The statute of South Carolina provides (Code Civ. Procedure 1932, § 399):

"An executor or administrator, a trustee of an express trust, or a person expressly authorized by statute, may sue without joining with him the person for whose benefit the action is prosecuted. A trustee of an express trust, within the meaning of this section, shall be construed to include a person with whom, or in whose name, a contract is made for the benefit of another."

"The testimony shows that Cousar was a person with whom, or in whose name, a contract was made, not only for himself, but for the benefit of another. He was, therefore, a trustee of an express trust and had the right to sue without joining the other person, for whose benefit the action was prosecuted." *Cousar* v. *Heath, Witherspoon & Co., supra.*

As said in *Norcross Butter & Cheese Manfg. Co.* v. *Summerour,* 114 Ga. 156 (39 S. E. 870):

"The liability of the defendant to the person for whose benefit the recovery is sought is not in any way involved in an action of the nature of the one instituted in the present case. It is a matter of no concern to the defendant what becomes of the money which he owes the plaintiff after it is recovered."

While it is generally true a receiver may not be sued without leave of the court which appointed him, this rule has no application where suit is brought against the receiver for personal tort in taking possession, under color of his office, of property which does not belong to him. *Gutsch* v. *McIlhargey,* 69 Mich. 377; *Kenney* v. *Ranney,* 96 Mich. 617; *McAfee* v. *Bankers Trust Co.,* 253 Mich. 685.

Defendant Jaffe did not testify. Had she testified, her testimony might have thrown light upon the

relations existing between her and defendant Irving Golden.

"Failure to produce evidence within a party's control raises the presumption that, if produced, it would operate against him; and every intendment will be in favor of the opposite party. *Brandt* v. *C. F. Smith & Co.*, 242 Mich. 217." *In re Petition of Upjohn*, 256. Mich. 181.

It is claimed defendant Jaffe is a *bona fide* purchaser. The defendant Irving Golden, in his answer, says she was a partner in the original transaction. There is no credible evidence she was a *bona fide* purchaser, and the burden was upon defendant Jaffe under the circumstances to show she was a *bona fide* purchaser. *Ripley* v. *Seligman*, 88 Mich. 177. Golden held the property under a constructive trust arising from his fraudulent conduct. One acquiring title from a fraudulent grantor has the burden of proving that he paid value and took without notice of the fraud. *Carrier* v. *Cameron*, 31 Mich. 373 (18 Am. Rep. 192); *Letson* v. *Reed*, 45 Mich. 27; *Ripley* v. *Seligman, supra; Whitaker Iron Co.* v. *Preston National Bank of Detroit*, 101 Mich. 146; *Cappon & Bertsch Leather Co.* v. *Preston Nat'l Bank of Detroit*, 114 Mich. 263; *Pinkerton Bros. Co.* v. *Bromley*, 128 Mich. 236; *Hogan* v. *Railway*, 140 Mich. 101; *John Schweyer & Co.* v. *Mellon*, 196 Mich. 590; *Harrison* v. *Grier*, 198 Mich. 672; *Republic Nat'l Bank* v. *Bobo*, 227 Mich. 6; *Cronin* v. *Palm*, 244 Mich. 306. Defendant Jaffe did not sustain this burden.

A receiver should account to the court which appointed him for all property coming into his hands as receiver. *Pontiac Trust Co.* v. *Newell, supra.*

"Where property or funds have come into the hands of a receiver as such, he is required to account

to the court which appointed him for all property or assets which he received by virtue of his appointment." 53 C. J. pp. 366, 367.

A receiver can be called to account only in the court which appointed him, *State, ex rel. Pope,* v. *Germania Bank of St. Paul,* 103 Minn. 129 (114 N. W. 651) ; unless such cause has been removed to another court after the appointment of a receiver, in which case he may be required to account to the court having jurisdiction of the receivership, 34 Cyc. p. 1317 ; 53 C. J. pp. 366, 367. This is inherent in the very nature of receivership and it is immaterial whether the property came into the hands of the receiver by reason of his appointment, or whether he acquired it during the progress of administration of the receivership.

When this case was considered in *Stephenson* v. *Golden, ante,* 493, it was reversed and remanded to determine the amount defendants had invested in the property, upon the payment of which plaintiff would be entitled to a conveyance. Further investigation is convincing that an agent who violates his duty is not only not entitled to a commission, but that, as a trustee *ex maleficio,* a constructive trustee may not recover for improvements made on property fraudulently acquired, and that the true rule is that defendants here are entitled only to be reimbursed for the purchase price paid, — for what they paid for the property. 1 Mechem on Agency (2d Ed.), § 1192, and cases cited. There is no dispute that Irving Golden paid only $650 to acquire the outstanding titles in question. Upon the payment of that sum, with interest at 5 per cent. plaintiff will be entitled to a conveyance of the title to the premises.

The decree of the trial court will be reversed, with costs of both courts, and the case remanded for an

accounting of the rents and profits, if any, received by defendants since they acquired title to the premises. The motion to take further testimony and re-try the case is denied.

FEAD, C. J., and NORTH, BUSHNELL, SHARPE, and CHANDLER, JJ., concurred with POTTER, J.

WIEST, J. (*dissenting*). Plaintiff, as a court-appointed receiver, claims that his attorney employed defendant Irving Golden, a real estate broker, to ascertain whether, and at what price, interests, held by others in certain property, could be obtained and the broker purchased, in his own name, and, upon demand, refused to convey to plaintiff.

When I joined in the former opinion I entertained the view that defendant Irving Golden should be adjudged a trustee *ex maleficio*. Upon reconsideration I fail to find the essentials of such a relation. No writing was made and no consideration paid.

Plaintiff, as receiver, had no court authorization to enter into any such purchase and without it the alleged agreement was *nudum pactum*.

Plaintiff, if tendered conveyance by defendant Golden, could not be made to perform and Golden was, at all times, without right of action.

Plaintiff cannot have declaration of a constructive trust or hold defendant Golden as a trustee *ex maleficio* under an agreement, the subject-matter of which plaintiff, as receiver, had no power to enter into or perform.

Our former opinion should be reversed and the decree in the circuit court affirmed, with costs to defendant.

BUTZEL, J., did not sit.