RYAN *v.* CHOPP.

1. ESTOPPEL—PRINCIPAL AND AGENT—LACHES—TRUSTS.

In suit by aged mother against administrator of deceased son's estate in which it was sought to have decree declaring that all property in son's estate was that of the mother and had been held in trust by son for her, where it appears that for many years following the death of her husband the son had a power of attorney and continued to conduct the funeral home and livery business and that there were many years of mutual trust and confidence between them, neither the mother, who first learned after his death that he had claimed the property adversely to her, nor the executor of her estate, was barred by estoppel or laches.

2. TRUSTS—CONSTRUCTIVE TRUST—EVIDENCE.

Evidence *held,* to establish constructive trust in favor of mother's estate except as to a garage property where son had continued funeral home and livery business during his father's last illness and after his death had taken title to property in his own name rather than mother to whom father had left his personal property.

3. COSTS—EQUITY—FAILURE OF EITHER PARTY TO PREVAIL IN RE-SPECTIVE APPEAL.

No costs are allowed in equity suit where neither party has prevailed in its respective appeal.

Appeal from Houghton; Miller (Guy A.), J., presiding. Submitted January 9, 1946. (Docket No. 33, Calendar No. 43,238.) Decided April 1, 1946.

Bill by Margaret Ryan against Gabriel Chopp, administrator of the estate of Urban J. Ryan, deceased, Merchants & Miners Bank, and Mary Ross Ryan to have certain property standing in the name

Laches as terminating the right to restitution, see Restatement, Restitution, § 148 (1), and comments a–e.

of Urban J. Ryan decreed to be the property of plaintiff and for an injunction. William E. Ryan, executor of the last will and testament of Margaret Ryan, deceased, substituted as plaintiff. Decree for plaintiff. Defendant Mary Ross Ryan appeals. Plaintiff cross-appeals. Affirmed.

*N. C. Spencer,* for plaintiff.

*Edward J. Dundon,* for defendant Mary Ross Ryan.

BUSHNELL, J. On December 1, 1944, Mrs. Margaret Ryan, widow of John R. Ryan, of Calumet, Michigan, filed a bill of complaint against defendant Gabriel Chopp, administrator of the estate of Urban J. Ryan, deceased, his widow, Mary Ross Ryan, and Merchants & Miners Bank of Calumet, seeking a determination of title to certain real and personal property. Urban was a son of Margaret and John R. Ryan.

John R. Ryan, prior to his death in May of 1928, was the owner and operator of a funeral home and mortuary in Calumet. He contracted septicemia while embalming a body and was in ill health and confined to his bed for a year or more before his death. His unmarried son, Urban, who was assisting him, took over the management of his affairs, and, it is claimed, was given power of attorney to carry on the business and draw checks on his father's bank account.

On April 18, 1928, John R. Ryan executed a bill of sale by which he sold to his wife, Margaret, "all of the personal property of whatever name, nature and kind, whether in possession or not, now belonging to me and wherever situate, including all choses in action, book accounts and books of account, bills

of exchange, promissory notes, stock and bonds, intending hereby to convey absolutely to the said Margaret Ryan all of my personal property wherever situate." His real property which passed to his wife included the "old funeral home," the livery stable, and garage.

From 1928 until his death in an automobile accident in 1944, Urban continued to conduct the funeral business. His mother was about 71 years of age when his father died. She was 86 years old when Urban died. She survived her son by about five or six months. After Margaret Ryan's death the instant action was continued, in the name of her executor, William E. Ryan.

Because of her age, lack of business knowledge, and her confidence in him, she never interfered with Urban's management of the business. During all this period, Urban and his mother lived together, with the exception of a short interval following his marriage to defendant Mary Ross Ryan, who, according to her brief testimony, lived in Hancock, Michigan, all of her life, with the exception of a year at Coronado, California, between January and December of 1944.

On March 19, 1927, $1,000 was drawn from John R. Ryan's account and deposited the same day in the account of Urban J. Ryan. During the latter part of November, 1927, a piece of property in Chicago, owned by John R. Ryan, was sold for "$4,000 or over," and a deposit appears in the account of Urban J. Ryan, as of December 7, 1927, of $4,068. According to the testimony of Mary Brennan, a sister of Urban, this money was brought from Chicago by her brother and given to her mother, Margaret Ryan, in the form of checks, which Urban said he would put in the bank for her and to which his mother agreed. The bank account of John R. Ryan shows that it was closed on Septem-

ber 22, 1927, by the withdrawal of $619.34, which was deposited on the same day in Urban's account. In addition to the usual transactions in the course of business, in Urban's account there was a deposit of $1,178.18 on August 21, 1931, and a debit of $3,500 on August 19, 1930. ·Margaret Ryan's savings account showed a withdrawal of $1,000 on January 5, 1934, the withdrawal slip bearing the indorsement of Urban J. Ryan.

Margaret Ryan at one time owned 113 shares of the First Bank Stock Corporation, which had been pledged as security for a loan at the Merchants & Miners Bank, which was used to purchase a new funeral home, the old funeral home having been sold to the government for a post office site. The record does not disclose the date of this sale or the disposition of the proceeds which were stated by Mary Brennan to be $8,000. Urban and his mother were comakers on the bank note. On October 5, 1943, this stock was transferred to Urban under the authority of a letter signed by Margaret Ryan and witnessed by Mary Brennan. At the time of Urban's death there was still due on this note $390, and interest, and the balance in his personal bank account at the time was $5,521.91, with another balance of $259.99 in the so-called "garage account." The original livery barn owned by John R. Ryan and, subsequently, by his wife, burned in 1931, and the fire loss of the barn was paid by check to Margaret Ryan, which was indorsed by her and also Urban J. Ryan. Other fire insurance policies which were originally issued in the name of Margaret Ryan were renewed in 1939 in Urban Ryan's name.

During the operation of the business by Urban Ryan, the sales tax licenses required since 1933 were taken in his name, and he was personally licensed as an embalmer and funeral director. As original

vehicles and hearses were sold or traded, titles to the new vehicles were taken in Urban Ryan's name and his income tax returns disclosed his business as a funeral director. In 1938 the Calumet & Hecla Consolidated Copper Company conveyed premises to Urban which are called in the record the "garage property," and on which he erected a public garage costing over $5,000.

At the trial of the cause the only testimony offered by defendant Mary Ross Ryan was the following:

"I reside in Hancock, Michigan. I never resided in any other place. I last voted in Hancock in 1944 in November election by absent voter's ballot. I was at the time in Coronado, California. I went there in January of 1944 and returned in December the same year."

Plaintiff's bill of complaint sought disclosure from defendant bank of the property in its possession in the name of Urban J. Ryan, and an injunction restraining it from delivering any of the cash or assets which it held until final determination of the cause, and enjoining defendant administrator from taking possession of any of the property in question or collecting any of the accounts receivable. A decree was sought declaring the real estate and personal property, money, et cetera, in question to be those of Margaret Ryan. The record does not show when Urban and his wife separated, except that it was about one year after his marriage.

The trial judge commented upon testimony which indicated that the proceedings for the probate of Urban Ryan's estate were the first intimation that came to the knowledge of Margaret Ryan that Urban had ever claimed ownership of the funeral home business, the bank accounts and real estate, and that there is no showing "that any claim was ever made by Urban Ryan to her during her lifetime that he

owned these properties adversely to her." He also commented that the record shows many years of mutual trust and confidence between the elderly mother and her son. It cannot be held, under these circumstances, that Margaret Ryan and her executor are now barred under any theory of estoppel or laches.

The bill of complaint is planted upon the theory that, during his father's lifetime, Urban Ryan acted as his agent and, after his death, either designedly or for convenience, took title to the properties which he was handling only as an agent for his mother. The bill of sale from John R. to Margaret Ryan gave title to her of all of her husband's personal property, and the stock pledged at the bank was transferred to Urban Ryan without consideration. The parcel of property, known as the "new funeral home," which was conveyed by quitclaim deed on August 16, 1930, by the Columbus Building Association, was purchased for $3,500, with a check on Urban Ryan's account, which was the account in which all the business transactions of the funeral home were handled. The trial judge concluded that title to this parcel was, therefore, held in trust by Urban Ryan for his mother.

The other parcel, known as the "garage property," which was also conveyed to Urban J. Ryan, was purchased from the Calumet & Hecla Consolidated Copper Company. The trial judge held that, although it was altogether probable that this title was held in trust for Margaret Ryan, the testimony surrounding the purchase was not sufficiently clear and convincing to justify such a holding.

Defendant Mary Ross Ryan has appealed from the decree vesting title to all real and personal property, with the exception of the garage property, in the estate of Margaret Ryan, deceased, and Mar-

garet Ryan's executor has cross-appealed from that portion of the decree which declared that the money in the garage account and the title to the garage property belong to the estate of Urban J. Ryan.

We are presented with a record in which there is scarcely any contradiction to plaintiff's testimony. In *Stephenson* v. *Golden,* 279 Mich. 710, this court, speaking through Mr. Justice POTTER, discussed at length constructive, express, and resulting trusts. Reference to that opinion will obviate the necessity of repetition on this subject, and we refer to that portion beginning at page 737 dealing with constructive trusts. The quotations from the text-writers and the authorities there cited are applicable to and control the facts presented in the instant case. We conclude, as did the trial judge, that, because of the facts presented, a constructive trust in favor of the estate of Margaret Ryan should be imposed upon all of the property held by Urban J. Ryan, with the exception of the so-called "garage account" and the "garage property."

The decree is affirmed, but without costs, neither party having prevailed in its respective appeal.

BUTZEL, C. J., and CARR, SHARPE, BOYLES, REID, NORTH, and STARR, JJ., concurred.